**GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD., Appellant,**

v.

**Maria De Los Angeles Ortiz GAMEZ, et al., Appellees.**

No. 04–02–00932–CV.

Court of Appeals of Texas, San Antonio.

Aug. 25, 2004.

19. *Id.* at 27.

Debora B. Alsup, Gretchen Neusel, Thompson & Knight L.L.P., Austin, Andrew F. Spalding, Ileana Blanco, Ross D. Kennedy, Bracewell & Patterson, L.L.P., Houston, for appellant.

Ronald Rodriguez, Law Office of Ronald Rodriguez, a Professional Corporation, Alberto Alarcon, Hall, Quintanilla & Alarcon, L.L.C., Eduardo Jaime, Rene Carlo Benavides, R. E. Lopez, Jr., Lopez, Peterson & Benavides, P.L.L.C., Marcel C. Notzon, III, Alvarez, Notzon & Gutierrez, L.L.P., Mario A. Castillo, Jr., Fernando A. Sanchez, Jr., Maria Elena Morales, Laredo, for appellees.

Bruce L. Jamison, Jamison & Associates, Houston, Larry W. Lawrence, Jr., Lawrence Law Firm, P.C., Raymond L. Thomas, Kittleman, Thomas, Ramirez & Gonzales, P.L.L.C., McAllen, Kenneth A. Valls, Wilson, Trevino, Freed, Valls, Trevino, P.L.L.C., Laredo, Thomas F. Dasse, Law Office of Thomas F. Dasse, P.C., Scottsdale, AZ, for other.

Sitting: SARAH B. DUNCAN, Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by PHYLIS J. SPEEDLIN, Justice.

In this case, we consider the issue of reasonable guardian ad litem fees in a suit involving multiple minor plaintiffs. We reverse and render judgment that the ad litems take nothing on their claim for appellate fees, and reverse and remand for re-calculation of the guardian ad litem fees in accordance with this opinion.

## BACKGROUND

Goodyear Dunlop Tires North America, Ltd. ("Goodyear") appeals the portion of the trial court's judgment that awards approximately $400,000 in aggregate fees, plus $30,000 in appellate fees, to six guardians ad litem. The underlying lawsuit arises out of a products liability case involving a single vehicle rollover of a 15–passenger van carrying sixteen individuals. The accident occurred in La Paz County, Arizona. The plaintiffs were migrant farm workers, residents of Arizona and Mexico, who were returning home from work. Six passengers were killed; the driver and other passengers suffered personal injuries. The plaintiffs initially sued only the driver of the van, but later added Goodyear as a third party defendant alleging it manufactured a defective tire.

Approximately four months before trial, the trial court appointed Marcel C. Notzon III to represent one of the minor plaintiffs. Almost three months later, and less than one month before trial, the court appointed four more attorneys, R.E. Lopez, Jr., Ronald Rodriguez, Eduardo Jaime and Mario A. Castillo, Jr., to serve as guardians ad litem for twenty minor plaintiffs[1]. The last guardian ad litem, Maria Elena Morales, was appointed nineteen days before trial to serve as ad litem for one additional minor.

The guardians ad litem attended two days of mediation on September 3 and 4, 2002; however, the case did not settle. Morales did not attend because she was appointed after the mediation. Eleven days before trial, on September 12, 2002, a settlement conference was held and a settlement was reached. The settlement was dictated into the record in open court at a half day hearing on September 13, 2002. The court approved the terms of the minors' settlement at a hearing on October 11, 2002, at which all adult plaintiffs and all minors were present, except for the minors of the surviving plaintiffs. Goodyear objected that the requested ad litem fees were excessive, and an evidentiary hearing on the fees was held on October 21, 2002. The court entered a final judgment on October 25, 2002, approving the settlement, dismissing all claims against Goodyear and awarding aggregate ad litem fees of $397,741.12 to be taxed against Goodyear as court costs. Upon Goodyear's request, the trial court subsequently entered written findings of fact and conclusions of law with respect to each ad litem's fees.

Thereafter, the ad litems requested that the court modify the judgment to award them appellate fees of $15,000 each. After a hearing on the issue of appellate fees, the court entered an order on February 21, 2003, awarding each ad litem $5,000 in appellate fees, for an additional aggregate award of $30,000 in appellate fees. Goodyear appealed, arguing that the ad litems are not entitled to any appellate fees, and that the award of almost $400,000 in ad litem fees is excessive.

## APPLICABLE LAW AND STANDARD OF REVIEW

■ Our Texas Rules of Civil Procedure mandate that a trial court appoint a guardian ad litem for a minor in instances where that minor's guardian or next friend appears to the court to have an interest adverse to the minor. *See* TEX.R. CIV. P. 173. In accepting an appointment, an ad litem assumes the dual responsibility of protecting the child's interests and acting

---

1. Castillo served as guardian ad litem for the fifteen minor children of the surviving plaintiffs. For the minor children of the deceased plaintiffs, Jaime was guardian ad litem for three minors in the same family, while Lopez and Rodriguez were guardians ad litem for one minor each.

as an officer of the court. *See Am. Gen. Fire & Cas. Co. v. Vandewater,* 907 S.W.2d 491, 493 n. 2 (Tex.1995). The ad litem is required to participate in the case to the extent necessary to adequately protect the interests of his ward. *Id.; see Phillips Petroleum Co. v. Welch,* 702 S.W.2d 672, 674 (Tex.App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.). The ad litem's role ends when the conflict between the minor and his parents, guardian or next friend ceases to exist. *Brownsville–Valley Regional Medical Center v. Gamez,* 894 S.W.2d 753, 755 (Tex.1995). Work performed outside the scope of the guardian ad litem's duties or after the conflict has been resolved will not be compensated. *Id.* at 754.

The trial court shall award the guardian ad litem a reasonable fee for his services to be taxed as costs of court. *See* TEX.R. CIV. P. 173. A trial court determines the appropriateness of a guardian ad litem fee by examining the same factors that determine the reasonableness of all attorney's fees as set out in Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Vernon 1998). Those factors include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Id.; see Garcia v. Martinez,* 988 S.W.2d 219, 222 (Tex.1999) (per curiam).

An appellate court will not set aside an award of guardian ad litem fees absent evidence of an abuse of discretion. *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998) (reviewing attorney fee award for abuse of discretion based on sufficiency of the evidence that fee was reasonable and necessary). The trial court's discretion in setting an ad litem fee is not unbridled. *Simon v. York Crane & Rigging Co.,* 739 S.W.2d 793, 794 (Tex.1987). A trial court abuses its discretion in awarding ad litem fees if there is no evidence or insufficient evidence to support the fee award. *Bocquet,* 972 S.W.2d at 21; *see also Borden, Inc. v. Martinez,* 19 S.W.3d 469, 471 (Tex.App.-San Antonio 2000, no pet.). When an appellant challenges the factual sufficiency of the evidence to support an adverse finding, we consider and weigh all the evidence, both that in support of and contrary to the challenged finding. *Celanese Chemical Co., Inc. v. Burleson,* 821 S.W.2d 257, 260 (Tex.App.-Houston [1st Dist.] 1991, no writ) (citing *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986)). We must uphold the finding unless we decide it is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *Id.* In reviewing an ad litem fee award, the appellate court may draw upon the common knowledge of the justices and their experiences as lawyers and judges in reviewing the evidence in support of the fee awarded. *Missouri Pac. R. Co. v. Alderete,* 945 S.W.2d 148, 150 (Tex.App.-San Antonio 1996, no pet.).

### GUARDIAN AD LITEM FEES

Goodyear argues that the ad litem fee awarded to each of the six court-ap-

pointed guardians ad litem is excessive and is not supported by factually sufficient evidence under the *Garcia* factors. Specifically, Goodyear asserts the fees are unreasonable because the guardians ad litem were compensated for: (1) work that was outside the scope of their ad litem role and more appropriate for the plaintiffs' attorneys to perform; (2) work done after the trial court approved the minors' settlement and the conflict ended; (3) excessive and unconscionable amounts of time for certain tasks; and (4) excessive hourly rates. In addition, Goodyear argues that the trial court did not have plenary jurisdiction to award an additional $30,000 in appellate fees to the ad litems, and that even if the court had jurisdiction, appellate fees are not permitted. Goodyear requests that we reverse and render judgment awarding an aggregate fee of $160,041 to the six guardians ad litem. We will first set forth the respective fee awards, and then address each of Goodyear's specific objections.

### Fees Awarded

At the October 21, 2002, hearing on the ad litem fees, each ad litem testified to his or her itemized billing statement and hourly rate, and was then cross-examined by Goodyear. Expert witnesses for both sides also testified on the customary hourly rate for a guardian ad litem in Webb County and across the state. At the conclusion of the evidentiary hearing, the court took the matter under advisement. On October 25, 2002, the court entered a final judgment awarding a total of $397,741.12 in ad litem fees. The judgment reflected a reduction in the hourly rate from the requested $400 to $500 per hour to $300 [2] per hour for each ad litem, and a lesser hourly rate for firm associates and paralegals. The court's judgment also awarded a reduced number of hours from the total requested by each ad litem, but did not identify the particular hours that were cut or explain the reasons for the reductions. Thereafter, upon Goodyear's request, the court entered findings of fact and conclusions of law reciting the *Garcia* factors with respect to each ad litem's fee award. The court's findings and conclusions do not explain which hours submitted by each ad litem were rejected or the reason for the rejection.[3]

The trial court found that the following fees [4] for each ad litem are reasonable and consistent with the customary ad litem fees in the community:

| Ad Litem | Fee Awarded | Hours Awarded | Rate Awarded |
|---|---|---|---|
| Notzon | $109,879.51 | 365 hours | $350 per hour |
| Castillo | $ 64,434.28 | 210 hours | $300 per hour |
| Jaime | $ 60,208.66 | 195 hours | $300 per hour |
| Lopez | $ 59,914.91 | 222 hours | $300 per hour |

2. The first ad litem appointed, Marcel Notzon, was compensated at a rate of $350 per hour. The court's findings do not explain the reason for Notzon's premium rate, but there was expert testimony that Notzon should receive a higher hourly rate than the other ad litems based on his leading role in requesting the *settlement conference and loss of two other cases because of his involvement in his ad litem duties.

3. Goodyear submitted proposed findings of fact and conclusions of law in a format that explained and identified the reductions in hours submitted. The trial court did not adopt Goodyear's format.

4. The quoted fee awards are taken from the judgment and include the ad litems' expenses, and, for Notzon and Lopez, time billed by other partners, associates and paralegals in their law firms. There are some discrepancies between the fees stated in the judgment and the fees stated in the court's findings of fact. For our purposes, we must accept the fee awards stated in the judgment.

| | | | |
|---|---|---|---|
| Rodriguez | $ 54,178.76 | 175 hours | $300 per hour |
| Morales | $ 49,125.00 | 160 hours | $300 per hour |

The court's findings of fact and conclusions of law show that the court examined each ad litem's bill, applied the *Garcia* factors to each ad litem and reduced the hourly rate and number of hours submitted by each ad litem on an individual basis;[5] the court did not uniformly reduce the ad litem bills by an arbitrary percentage. The court concluded that the fee awarded to each ad litem was "reasonable and necessary" based on the ad litem's qualifications, the time limitations and the work performed within the overall context and complexity of the case. The court found that the ad litems' involvement was critical in reaching a settlement. Further, the court found each ad litem was prevented from accepting other work during the ad litem appointment. The court also found the ad litems' participation in hearings and depositions was "reasonable and necessary," and noted that Goodyear never objected or tried to limit the ad litems' participation or services at any time prior to the approval of the settlement. Finally, the court considered the results obtained for each particular minor and the total settlement amount. The court concluded that the hourly rate and fees awarded were customary for similar guardian ad litem services in Webb County.

In reviewing the sufficiency of the evidence on the reasonableness of the ad litems' fees, we next examine each of Goodyear's objections in light of the record before us.

### 1. Scope of Guardian Ad Litem Role.

■■ On appeal, the ad litems initially assert that because Goodyear did not object to the ad litems' activities at the time they were occurring, and raised its first objection when the ad litem bills were submitted,[6] it has waived its right to object. We disagree. The Supreme Court recently held that a defendant need not object to an ad litem's services as outside the proper scope at any time prior to the fee hearing. *Jocson v. Crabb*, 133 S.W.3d 268, 270 (Tex.2004) (defendants did not waive their objection to ad litem's attendance at depositions and review of deposition notices and correspondence as beyond scope of ad litem's role by raising first objection at the fee hearing). The burden was not on Goodyear, but, rather, on the ad litems to ensure that their services did not exceed the limited scope of a guardian ad litem's role in protecting the minor's interests. By raising its first objection to the ad litems' services and fees at the fee hearing, Goodyear properly preserved its objection. *Id.*

Goodyear argues the guardians ad litem engaged in activities outside the scope of their role and should not be compensated for such work. Goodyear specifically chal-

---

**5.** Notzon submitted 415 total hours for himself, his associates and paralegals, but was compensated for 365 hours (comprised of 272 hours of his time, 75 hours of associates' time and 18 hours of paralegals' time). Lopez submitted 261.5 total hours for himself, his partners and associates, and was compensated for 222 hours (comprised of 148 hours of his time and 74 hours of his partners' time). Rodriguez initially submitted a bill for 352 hours, but revised it to 178.8 hours and was compensated for 175 hours. Castillo submitted 228.5 hours, but was compensated for 210 hours, while Morales submitted 223 hours, and was compensated for 160 hours. Finally, Jaime submitted 305 hours for himself and his associates, and was compensated for 195 hours.

**6.** In its findings of fact, the trial court stressed that Goodyear did not object to the ad litems' activities at any time before the fee hearing.

lenges time charged in preparing for, attending and reviewing depositions not relevant to the ad litems' minors, as well as time for reviewing liability-related pleadings and discovery motions, including deposition notices.

 A guardian ad litem's duty is to act as the personal representative of the minor, rather than as the attorney for the minor, and to participate only to the extent necessary to protect the minor's interests. *Jocson,* 133 S.W.3d at 271 (citing *Am. Gen. Fire & Cas.,* 907 S.W.2d at 493 n. 2). No statute precisely defines the scope of participation by a guardian ad litem in a personal injury lawsuit.[7] Case law, however, instructs us that although a guardian ad litem is allowed some latitude in determining what activities best serve the minor's interests, he must restrict his actions to those necessary to perform the ad litem's limited role. *Phillips,* 702 S.W.2d at 674; *Byrd v. Woodruff,* 891 S.W.2d 689, 705–06

(Tex.App.-Dallas 1994, writ denied). The guardian ad litem's services must not duplicate the work performed by the plaintiff's attorney. *Phillips,* 702 S.W.2d at 674. A guardian ad litem may only attend depositions, hearings and conferences, participate in strategy sessions with attorneys and engage in other activities when they are necessary to protect the minor's interests. *Roark v. Mother Frances Hosp.,* 862 S.W.2d 643, 647 (Tex.App.-Tyler 1993, writ denied) (guardian ad litem's participation in filing and serving pleadings, strategy sessions with plaintiff's counsel and voir dire and assuming lead in settlement negotiations was beyond scope of his role and time was properly discounted as non-compensable). If an ad litem engages in work more appropriate for the plaintiff's attorney and beyond the scope of the ad litem's role, such work is non-compensable.[8] *Id.; Gamez,* 894 S.W.2d at 755.

7. The recent amendments to the Texas Family Code establish distinctly separate roles for amicus attorneys, attorneys ad litem and guardians ad litem in suits affecting the parent-child relationship. *See* Tex. Fam.Code Ann. § 107.001 ( Vernon Supp.2004). An amicus attorney and an attorney ad litem are attorneys appointed to assist the court in protecting the child's interests and to provide legal services to the child, respectively. *Id.* A guardian ad litem is a person, not necessarily an attorney, appointed to represent the best interests of the child. *Id.* Amicus attorneys and attorneys ad litem are authorized to participate in the litigation to the same extent as an attorney for a party, while a guardian ad litem is only authorized to investigate the case to the extent necessary to determine the best interests of the child by reviewing the child's medical, psychological and school records, interviewing the child and any person with significant knowledge of the child, and to consider the child's expressed objectives, encourage settlement and perform any other specific task directed by the court. Tex. Fam. Code Ann. §§ 107.002, 107.003 (Vernon Supp. 2004). All three categories of ad litems are entitled to receive copies of pleadings and notice of hearings, and to participate in case

staffings and attend all legal proceedings, but the guardian ad litem may not call or question witnesses or otherwise provide legal services unless appointed in a dual role. *Id.*

8. The Texas Supreme Court Advisory Committee has drafted a proposed new Rule 173, Tex.R. Civ. P., which more clearly defines the scope of a guardian ad litem's role by prohibiting participation in discovery, court proceedings or trial (except for mediation), unless ordered by the court for sufficient reasons shown. *See* Rule 173.3(b), Tex.R. Civ. P. (Tex. Sup.Ct. Adv. Comm., Proposed Draft March 9, 2004). The proposed rule recognizes that a guardian ad litem acts as an advisor to the court, and has ". . . the limited duty to review the proposed settlement, determine whether the settlement is in the party's best interest, and advise the court as to the fairness to the party of the settlement." Proposed Rule 173.3(a), Tex.R. Civ. P. Proposed Rule 173.4(a) further provides that guardians ad litem may be paid a ". . . reasonable hourly fee for necessary services performed." Proposed Rule 173.4(a), Tex.R. Civ. P. The proposed Rule 173 would apply only to guardian ad litem appointments in civil lawsuits not governed by

A guardian ad litem clearly has the duty to evaluate a proposed settlement from the minor's perspective and make a recommendation to the court on the minor's behalf. *Byrd,* 891 S.W.2d at 706. In reviewing a settlement offer, the guardian ad litem's duty includes evaluating the damages suffered by the minor, the adequacy of the settlement, the proposed apportionment and manner of distribution of the settlement proceeds and the amount of attorney's fees charged by the plaintiff's attorney. *Id.* at 707 (guardian ad litem appropriately participated in the settlement conference, reviewed the evidence, examined the legal issues and consulted with the minor and her parents).

One of the issues presented by this appeal is whether it was necessary and appropriate for the ad litems to review *all* live liability-related pleadings and discovery materials in order to effectively evaluate the proposed settlements. We think not. We hold it is not reasonable or necessary for a guardian ad litem to attend or review every deposition, or to review and bill time for every motion and pleading filed in a case, without regard to its relevance to the ad litem's minor. A guardian ad litem's review of discovery documents and pleadings should be guided, and constrained, by what is reasonable and necessary to prepare for mediation and evaluate a potential settlement from his minor's perspective. *See Byrd,* 891 S.W.2d at 706–07. We acknowledge that it is necessary and appropriate for a guardian ad litem to review the live liability-related pleadings and discovery materials related to his particular minor in order to be able to evaluate the value of the minor's claim and any potential settlement offer; however, as a rule, it is not necessary or appropriate for a guardian ad litem to review *all* discovery motions and depositions and to participate in *all* pre-trial, discovery and sanctions hearings without regard to their relevance, or irrelevance, to the minor's interests. When in doubt, time and circumstances permitting, a guardian ad litem should request guidance from the trial court in advance before engaging in the particular activity in question. *See Jocson,* 133 S.W.3d at 270 (recognizing that "[w]hile the parties would be wise to seek direction from the court when they disagree about an ad litem's role, it could be expensive and disruptive if they had to pursue every disagreement to a hearing throughout the pretrial process").

Here, the ad litems testified at the evidentiary hearing that the seven plaintiffs' attorneys were diligently and competently representing all the plaintiffs' interests. Despite that testimony, all six guardians ad litem billed substantial amounts of time to duplicate the tasks already being competently performed by the plaintiffs' attorneys by reviewing countless deposition notices and other discovery motions, attending depositions not related to their minor and reviewing every pleading filed in the case regardless of the relevance to their minor.

A review of their billing statements shows that, as a group, the ad litems billed time for reviewing every piece of paper that crossed their desk in this case.[9] For

the Texas Family Code, Texas Probate Code or Texas Parental Notification Rules. Even though the new proposed Rule 173 has not been adopted, we acknowledge the policies underlying the proposed rule and the occasional abuses in the guardian ad litem system that it was designed to curtail.

9. Notzon testified that he reviewed and logged time for every piece of paper he received, including, for example, letters rogatory, privilege logs and pro hac vice motions, because he assumed each document was important since the attorneys had sent it to him.

example, Notzon had 53 separate entries of 0.10 on one day (totaling 5.30 hours) to review all sixteen plaintiffs' answers and objections to Goodyear's interrogatories, which were identical except in minor respects. *See, e.g., Jocson,* 133 S.W.3d at 270 (defendants objected to ad litem's fee where ad litem testified he had standard practice of billing 0.25 hour for each document he reviewed, even if it was only a notice of deposition or letter containing a single sentence). Other ad litems billed substantial amounts of time for reviewing deposition notices, which were one-page standard forms that simply had different names, dates and places.

The following billings are further examples of activities [10] that appear to be outside the proper scope of a guardian ad litem's duties:

Notzon charged 64.60 hours for two associates, one of whom was an unlicensed lawyer, to prepare for, telephonically attend and summarize *every* deposition in the case at an hourly rate of $150, none of which depositions were relevant to Notzon's minor.[11] In addition, Notzon testified that he attended virtually every hearing in the case, including hearings on pretrial matters, discovery of documents, motions to strike experts, motions to compel production and inspection, motions for sanctions and summary judgment motions because the plaintiffs' attorneys requested his participation as the first ad litem appointed.

Lopez charged 16.50 hours for a partner and an associate to prepare for and travel to McAllen for the deposition of Maria del Carmen Rangel, the mother of Notzon's minor, which was not relevant to Lopez's minor and which ended up being cancelled—on the day before the September 12, 2002, settlement conference. Lopez also charged 16.70 hours for another partner to prepare for, travel to and attend the deposition of Dr. Jose Gonzalez, a life care specialist whose testimony was relevant only to the surviving plaintiffs and their children and was wholly unrelated to Lopez's minor. In addition, on one day Lopez billed 4.40 hours to review eleven deposition notices with identical formats. Lopez himself did not attend the settlement conference on September 12 and 13, 2002, the very activity that was clearly within his guardian ad litem role, but instead personally billed 6.90 hours on September 12 for reviewing discovery and trial related pleadings (*i.e.,* motion to strike expert testimony, motion in limine, witness and exhibit lists and proposed jury instructions), while also billing 20.70 hours for his partner's time in attending the day and a half settlement conference and meeting with the clients in Lopez's place.

Morales charged 13.00 hours for another attorney, Alfonso Ornelas, who was also the ad litems' expert witness, to prepare for and travel to McAllen for the cancelled deposition of Maria del Carmen Rangel, which was not relevant to Morales' minor. Morales billed zero hours for attending the half-day settlement conference on September 13, 2002, but billed 7.00 hours that day for reviewing discovery and trial pleadings. In addition, Morales billed between 2.00 and 4.00 hours to review *each* deposition notice, resulting in a total of 50 hours solely for reviewing and discussing deposition notices. Castillo charged 9.00 hours

---

10. Some of the cited billings are also excessive for the task performed, as discussed below.

11. The only deposition relevant to Notzon's minor, that of the minor's mother Maria del Carmen Rangel, was cancelled, although some of the other ad litems still billed substantial time for traveling to the cancelled deposition in McAllen.

for traveling to McAllen for the same cancelled and irrelevant deposition of Maria del Carmen Rangel. Jaime billed 25.00 hours for unspecified "research" without any indication how it was relevant to his minors, which appears to be outside the scope of his ad litem duties.

As we have previously noted, activities outside the scope of a guardian ad litem's duties or that duplicate work properly performed by the plaintiff's attorneys are not compensable. Here, the trial court made no specific findings as to why it was necessary and reasonable for the ad litems to attend or review every deposition and review every single discovery motion and pleading filed, and we can discern no such reason in this case. Therefore, on remand the trial court should determine which, if any, particular discovery motions, discovery materials (including depositions) and pleadings were necessary to protect the interests of the various minors.

### 2. Work Done After Settlement.

 Goodyear next argues that the trial court erred in awarding fees for ad litem services rendered after the conflict between the minors and their parents ended. A guardian ad litem is appointed to represent the minor litigant only while there is a conflict of interest between the minor and next friend. Tex.R. Civ. P. 173; see Gamez, 894 S.W.2d at 755. When the conflict between the minor and next friend ceases to exist, the need for the guardian ad litem's services no longer exists and the ad litem should be removed. Gamez, 894 S.W.2d at 755 (ad litem's duties cease when either judgment is rendered or the conflict is resolved). A guardian ad litem may not recover fees for services rendered after resolution of the conflict for which he or she is appointed. Id. at 757 (where there was no dispute regarding the settlement or proper method of managing the minor's recovery, and no evidence of any

continuing conflict between the minor and parents, the need for a guardian ad litem no longer existed and trial court should have dismissed the ad litem upon rendering a final judgment); see also Byrd, 891 S.W.2d at 705 (a guardian ad litem's powers end when judgment is entered).

In this case, the settlement was reached on September 12, 2002, and was dictated into the record in open court the next day, September 13, 2002. After the settlement, the only remaining task for the guardians ad litem was to structure the allocation and payment of the minors' share of the settlement. The record contains evidence that after the settlement was reached, a conflict of interest still existed between some of the minors and their parents with regard to the portion of the family's settlement that would be allocated to the minor and the manner in which the minor's settlement would be structured for payment and investment. At least two of the ad litems convinced the parent of their minor to allocate a substantially larger portion of the family's settlement to the minor than originally planned. There was also evidence that all of the ad litems played an important role in convincing the parents to structure the minors' settlement payments to ensure the money would be paid out over the majority of the minors' lives, rather than in one lump sum.

 This evidence supports the expenditure of time by the ad litems in resolving the dispute over allocation and structuring of the minors' settlement amounts; however, it does not warrant or justify time billed for reviewing discovery and trial related pleadings after the settlement had been reached. In that regard, on or after September 13, all of the ad litems billed time for reviewing discovery and trial related pleadings even though the case had

been settled.[12] We hold that review of discovery and trial related documents by a guardian ad litem after a settlement has been reached, although not yet formally approved by the court, is unreasonable and outside the scope of the ad litem's duties, and as such, is non-compensable; such work would only be reasonable and compensable in the most unusual of circumstances and upon an express finding of reasonableness and necessity by the trial court.[13]

■■■ The ad litems also billed time after the settlement for preparing their ad litem reports and fee statements, and for researching fees and attending the fee hearing on October 21, 2002.[14] We hold that the ad litems are entitled to be compensated for their time in preparing their ad litem reports to the court because that falls within the scope of their duties and promotes the interest of their minor. *See, e.g., Tri–Star Medical Services, P.A. v. Jones,* No. 01–97–01240–CV, 1998 WL 862498 at *3 (Tex.App.-Houston [14th Dist.] Dec. 10, 1998, no pet.) (not designated for publication) (affirming guardian ad litem fee which included hours billed for preparing 14–page ad litem report).

■■■ The ad litems are not entitled, however, to earn fees for post-conflict services in pursuit of their own interests, such as drafting their fee statements, preparing for the fee hearing and their time defending their fees at the hearing. *See Cahill v. Lyda,* 826 S.W.2d 932, 933 (Tex.1992) (guardian ad litem is entitled to recover fees as long as ad litem is representing interest of minor, as opposed to ad litem's own interest); *see also Holt Texas, Ltd. v. Hale,* 144 S.W.3d 592, 597(Tex.App.-San

---

**12.** After the September 13, 2002, settlement, Notzon billed 1.00 hour to review a motion in limine, witness and exhibit lists, an ad litem answer and third party defendant's response to request for disclosure; Lopez billed 1.10 hours to review an answer and motion to strike a proposed order; Castillo billed 24.50 hours to review depositions and the case files of Notzon and one of the plaintiff's attorneys in McAllen; Morales billed 9.00 hours to review the exhibit and witness lists, motion in limine, ad litem answer, proposed jury instructions and Goodyear's motion to transfer venue; and Rodriguez billed 6.60 hours to review Jaime's ad litem answer and the plaintiff's attorney's file in McAllen. From the record, it is not possible to decipher how much time Jaime billed for reviewing discovery and trial related pleadings after settlement because his time sheet contains no dates; on remand, we suggest the trial court obtain an amended billing statement from Jaime.

**13.** For example, Castillo testified that he reviewed the depositions of the surviving plaintiffs after the settlement in hopes of obtaining necessary information, such as the minors' dates of birth, that he was unable to obtain from the parents in person. If on remand the trial court determines that such activity was necessary and reasonable, and enters a specif-ic finding, Castillo's time may be compensated in a reasonable amount.

**14.** In his fee statement, Notzon billed 3.40 hours to prepare his ad litem report, and billed 5.80 hours for his time in conferring about fees with the other ad litems and the time of an associate to research and brief the issue of fees. At the fee hearing, Notzon requested an additional 32.00 hours for preparation and attendance at the fee hearing. Lopez billed 2.10 hours to prepare his ad litem report, and billed 18.40 hours for three attorneys to prepare for the fee hearing, and an additional 24.00 hours for three attorneys to attend the fee hearing; Lopez also billed 2.00 hours to research fees for future services. Morales designated no time for preparing an ad litem report or fee statement. At the fee hearing, she requested an additional 5.50 hours. Castillo billed 2.50 hours to prepare his fee statement. Rodriguez billed 1.50 hours to prepare his ad litem report, and 9.00 hours to research fee issues, prepare his fee statement and attend the fee hearing. Jaime billed 6.00 hours to prepare his ad litem report and fee statement, with no division of time between the two reports, and billed 6.00 hours to attend the fee hearing. Jaime also billed 50 hours for "future ad litem services."

Antonio 2004, no pet. h.) (holding Rule 173 does not authorize award of fees for guardian ad litem's effort and time spent on dispute over ad litem fees, as that does not constitute representation of the minor, but representation of ad litem's own interest). Once the settlement was approved on October 11, 2002, the conflict requiring the ad litems' appointment ended, and the minors had no further need for their services. *Gamez,* 894 S.W.2d at 757. The ad litems' time and effort in researching and seeking their fees after October 11, 2002, are actions promoting their own interests, not those of their minors, and as such are noncompensable under the guardian ad litem scheme. *Holt,* 144 S.W.3d at 597; *see also Harris County Children's Protective Services v. Olvera,* 77 S.W.3d 336, 342 (Tex. App.-Houston [14th Dist.] 2002, pet. denied).

▮ Finally, we note that Jaime billed 50 hours for "future services," which are clearly not compensable. *Gamez,* 894 S.W.2d at 755 (guardian ad litem is not entitled to compensation for future ad litem services rendered after conflict has been resolved). We cannot determine from the trial court's findings whether Jaime's 50 hours for "future services" was included in his final fee award; that is an issue that must be determined on remand.

### 3. Over–Billing.

Goodyear also complains on appeal that the guardians ad litem over-billed by charging time for other attorneys' services and charging excessive or unconscionable amounts for certain tasks.

### A. Billing for More Than One Attorney.

▮ When a guardian ad litem is appointed, the trial court intends that appointed attorney to personally protect the minor's interests and to act as an officer of the court. *Jocson,* 133 S.W.3d at 271.

Accordingly, it is generally not anticipated or reasonable for a guardian ad litem to delegate his ad litem responsibilities to other attorneys. We recognize, however, that extenuating circumstances may occasionally arise which justify another attorney's involvement. In those situations, prior approval from the trial court of the second attorney's involvement is preferable when time and circumstances permit; when prior approval is not possible or practical, a subsequent finding by the court that the additional attorney's services were reasonable and necessary will suffice. *See id.* at 270.

▮ Here, Lopez billed 3.20 hours each for himself and three other attorneys to attend a meeting about the case, for a total of 12.80 hours. Lopez also billed a total of 21.50 hours for three attorneys (including Lopez) to attend the settlement approval hearing, and billed 24.00 total hours for two other attorneys to attend the fee hearing with him. Notzon had a total of seven people billing time on this case, including himself, three other attorneys and three paralegals. We hold that a guardian ad litem may not be compensated for time expended by other attorneys, unless the trial court has made a specific finding that the other attorney's services were reasonable and necessary under a particular extenuating circumstance. On remand, the trial court should make specific findings as to whether it was reasonable and necessary in each particular circumstance for an attorney other than the appointed guardian ad litem to expend time on the minor's behalf.

### B. Excessive Billing.

▮ Goodyear also complains of excessive and unconscionable billing by some of the ad litems. The record shows that Morales acknowledged billing time for sleeping while out of town for the simple

reason that she was required to be away from her practice. Similarly, Castillo testified that he billed about five hours for sleeping on two occasions because he was not able to put his children to bed. In addition, a couple of the ad litems submitted bills for more than 24 hours in one day—an impossibility. For example, Morales billed 37.55 hours to review eleven deposition notices on September 9, 2002. When combined with other billing entries for that day, Morales billed a total of 52.85 hours for September 9, which she acknowledged at the hearing must be an error; but, she did not correct her billing. Rodriguez testified that he worked "in excess of 24 hours" on the two travel days to San Diego, for which he billed 24 hours each. We hold that billing time for sleeping and billing in excess of 24 hours for one day is *per se* unreasonable, as well as unconscionable. *See Alderete*, 945 S.W.2d at 150 (in determining reasonableness of fees, justices may draw on their common knowledge and experience as lawyers). We conclude that when the evidence is undisputed, as it is here, that time was billed for sleeping, that billing is unreasonable as a matter of law and may not be compensated. Likewise, we hold that unless the record contains direct testimony from the attorney that he actually worked for 24 straight hours in one day, it is unreasonable for the court to compensate a 24–hour day. Certainly, it is unreasonable, even unconscionable, to ever bill or seek compensation for more than 24 hours in any one day.

Finally, the ad litems' bills show widely varying amounts of time billed for the exact same tasks. To review a single deposition notice, the ad litems' time ranged between 0.10 to 4.00 hours. In addition, while three of the ad litems traveled to Phoenix, Arizona to meet with their minors, the hours billed by each ad litem varied widely. Lopez billed 26.00 total hours for his time in traveling to and from Phoenix and meeting with his minor. On the other end of the spectrum, Morales billed 65.00 total hours (including 9.00 hours to make travel arrangements) for her travel and meeting with her minor, including visiting schools; Morales' time includes one 24–hour day and one 20–hour day with time billed for sleeping. Castillo billed 58.00 total hours for the trip and his meetings with the fifteen minors of the survivors, which includes one 24–hour day and one 20–hour day. Rodriguez traveled to San Diego, California, then to San Luis, Mexico to meet with his minor, and billed 51.50 total hours (which includes two 24–hour days). When presented with such disparities among ad litems serving in the same case, the trial court must exercise its own discretion to determine the amount of time that is reasonable to expend on a particular task and adjust the hours on that basis. The record does not show that the court made that determination in this case.

In summary, we conclude that certain billings on some of the ad litems' fee statements are unreasonable as a matter of law. In particular, we hold the following charges cannot be characterized as reasonable or a proper performance of a guardian ad litem's legal obligations: billing time for sleeping; billing time because the ad litem did not get to put his children to bed; and billing for more than 24 hours in any one day. Even though no statute defines the scope of a guardian ad litem's role, these types of billings demonstrate how the system can be abused by ad litems and must not be condoned or compensated. Because the trial court did not identify the specific hours that were removed from each ad litem's bill, we are unable to determine whether these billings were compensated in the final fee award; therefore, we must remand.

### 4. *Hourly Rate.*

██ Finally, Goodyear argues the trial court's approval of $300 to $350 hourly rates for the ad litems—whose roles are circumscribed in scope and time—is excessive when the ad litems' customary hourly rates ranged from $150 to $225. The disparity between the ad litems' customary hourly rates, the hourly rates they requested, and the hourly rates awarded by the trial court are demonstrated in the following chart set forth in Goodyear's brief:

| Ad Litem | Customary Rate | Rate Requested | Rate Awarded |
|---|---|---|---|
| Notzon | $200-225/hour | $ 400/hour | $350/hour |
| Lopez | $150/hour | $ 450/hour | $300/hour |
| Partners | $135/hour | $ 350/hour | |
| Morales | $225/hour<br>$90/hour for court appt. | $ 500/hour | $300/hour |
| Rodriguez | contingent fee basis | $ 400/hour | $300/hour |
| Castillo | contingent fee basis | $275-500/hour | $300/hour |
| Jaime | $175-200/hour | $ 400/hour | $300/hour |

On appeal, the ad litems respond that they presented competent evidence supporting the reasonableness of the requested hourly rates.

██ One of the factors to be considered in determining a reasonable fee for a guardian ad litem's services is "the fee customarily charged in the locality for similar legal services." *Garcia,* 988 S.W.2d at 222. The ad litems argue "similar legal services" means we should look only to the fee generally awarded to other guardian ad litems in Webb County. We disagree. We refuse to read this particular *Garcia* factor so narrowly. In setting a guardian ad litem's hourly rate, we stress that it is necessary and proper for the trial court to consider the attorney's customary hourly rate in his field of practice. *See Gamez,* 894 S.W.2d at 754 (referencing attorney's customary fee of $150 per hour in determining reasonableness of his compensation for guardian ad litem services); *see also Holt,* 144 S.W.3d at 596 (holding evidence of attorney's customary hourly rate of $200 and guardian ad litem rate of $300 did not support fee award of $555 per hour as reasonable in Webb County). In addition, we can discern no reason why compensation for guardian ad litem services would be dramatically different from one county to another. Accordingly, we hold that it is appropriate for the trial court to consider evidence of state-wide hourly fees if such evidence is presented, as it was in this case.

At the evidentiary hearing on ad litem attorneys' fees, the ad litems testified their customary hourly rates in their fields of practice ranged from $150 to $225; those with prior experience as guardians ad litem had received fees as high as $275 to $500 per hour in Webb County. Notzon testified that he had received even higher rates by agreement for his service as a guardian ad litem in Webb County.

In addition, the ad litems presented the testimony of three experts, Horace Hall III, a practicing lawyer in Laredo, Alfonso Ornelas, a municipal court judge in Webb County, and Ray Thomas, one of the plaintiffs' lawyers. Hall testified that $450 per hour was reasonable and within the range of customary guardian ad litem fees in Webb County; Ornelas opined that $400 to $500 per hour [15] was a customary hourly rate for a guardian ad litem in this type of

---

**15.** In addition to serving as an expert, Ornelas also performed work assisting Morales in

case in Webb County; and Thomas testified that the standard hourly rate for an attorney in a similar case is $350 to $450, but that an upward adjustment in the rate to $400 to $600 should be made for a guardian ad litem given the uncertainty of an ad litem fee.[16]

Goodyear's expert, Judge Harvey Brown, testified that the average hourly rate for attorneys in Harris County is $125 to $250, and that $15,000 was the highest guardian ad litem fee he had ever awarded. Brown opined that an hourly rate of $255 was reasonable for the ad litems' service in this case based on the ad litems' testimony about their customary rates and the state-wide average rate for equity partners in firms under thirty lawyers. Brown testified that Notzon should receive a higher hourly rate of $300, approximately $50 more than the other ad litems, because he filed the motion for settlement conference on his own initiative and turned down two specific cases due to his ad litem appointment.

Clearly, the $400 to $500 hourly rates requested by the ad litems in this matter are excessive. In most cases, they are double the customary hourly rates of the attorney and do not appear justified by either the complexity or length of the ad litem service. However, given the testimony of Goodyear's own expert that $255 to $300 was a reasonable hourly rate for the ad litems' service in this case, and in light of the other testimony, we can not say the trial court abused its discretion in applying hourly rates of $300 to $350 to calculate the guardian ad litem fees.

*Conclusion*

Based on our review of the record, we conclude, as detailed above, that the trial court abused its discretion in awarding $397,741.12 in aggregate guardian ad litem fees because the record contains factually insufficient evidence to support the reasonableness of the fees. *See Garcia,* 988 S.W.2d at 222; *Bocquet,* 972 S.W.2d at 21. Five of the six ad litems were appointed two weeks before a settlement was dictated into the record in open court and served only a total of six weeks before that settlement was finally approved. Nevertheless, the trial court awarded between 160 and 222 total hours to the ad litems for their six weeks of service.[17] In amassing the 160 to 222 hours, the ad litems engaged in activities outside the scope of their appointment, billed for other attorneys not approved by the trial court, billed for multiple attorneys to attend hearings, billed for attending and summarizing irrelevant depositions, billed between 0.10 and 4.00 hours to review *each* deposition notice, and even billed time for sleeping.

Our review of the evidence in support of the trial court's findings is hampered by the lack of any explanation of the particular hours cut from each ad litem's bill and the reasoning behind the trial court's reductions. In most instances, we simply cannot reconcile the fee awarded with the ad litem's billing statement, and thus cannot determine whether clearly non-recoverable hours were in fact excluded or compensated.[18] Accordingly, we reverse and remand to the trial court for re-calculation

---

her ad litem duties. Despite his testimony that the customary rate for an ad litem was $400 to $500 per hour, Ornelas billed his time at $550 per hour.

16. The guardian ad litem fees in this case were not contingent on the results obtained. *Garcia,* 988 S.W.2d at 222.

17. The court awarded Notzon 365 hours for his four months of ad litem service.

18. For example, Lopez originally submitted 119.7 hours of his time, 95.2 hours for his partners and 46.6 hours for his associates. The court's findings award Lopez 148 hours for his time (more than he originally submit-

of the guardian ad litem fees in accordance with this opinion.

## APPELLATE FEES

■■■ Goodyear argues the trial court did not have jurisdiction to modify the judgment to award $30,000 in appellate fees to the ad litems, and that in any event, the ad litems are not entitled to recover appellate fees. Because we agree that the trial court no longer had plenary jurisdiction to enter an order modifying the judgment to award the appellate fees, we reverse the award of appellate fees to the ad litems. Because we also agree that the guardians ad litem are not entitled to recover their appellate fees, we render judgment that the ad litems take nothing on their claims for appellate fees.

The final judgment approving the settlement and awarding the ad litem fees was signed on October 25, 2002. Goodyear timely requested written findings of fact and conclusions of law, which the court entered on December 17, 2002. Thereafter, more than thirty days after the judgment was signed, two of the ad litems filed motions to modify requesting that the court award appellate fees; the other ad litems joined in the motions. The court held a hearing at which the issues of the court's plenary power and the appropriateness of awarding appellate fees were discussed. On February 21, 2003, the trial court signed an order awarding an additional $5,000 to each ad litem for a total of $30,000 in appellate fees.[19] Goodyear timely filed an amended notice of appeal. On appeal, Goodyear asserts that its request for findings of fact did not extend the court's plenary power to modify the judgment beyond the standard 30–day pe-

riod and that the order awarding appellate fees is therefore void. We agree.

When the trial court signs a final appealable judgment, it retains plenary power to grant a new trial or vacate, modify, correct or reform the judgment for thirty days after the judgment is signed. TEX.R. CIV. P. 329b (d). The trial court's plenary power is extended beyond the 30–day period only upon the *timely* filing of a motion for new trial or motion to vacate, modify, correct or reform the judgment. TEX.R. CIV. P. 329b (e), (g); *see Pursley v. Ussery*, 982 S.W.2d 596, 599 (Tex.App.-San Antonio 1998, pet. denied). To be considered timely filed, a motion for new trial or motion to modify the judgment must be filed within thirty days after the date the judgment is signed. TEX.R. CIV. P. 329b (a), (g). This Court has expressly held that a request for findings of fact and conclusions of law does not extend the trial court's plenary power to act beyond the 30–day period after the final judgment is signed. *Pursley*, 982 S.W.2d at 599; *see also In re Gillespie*, 124 S.W.3d 699, 703–04 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding). Unlike a motion for new trial or motion to modify the judgment, a request for findings of fact does not attack the judgment, but merely seeks an explanation of the judgment. *Pursley*, 982 S.W.2d at 599 n. 2.

■■■ In this case, no motion for new trial or motion to modify the judgment was timely filed within thirty days after the judgment was signed on October 25, 2002. In waiting until after the court filed its written findings to file their motions to modify the judgment, it appears the ad litems were operating under the faulty as-

---

ted), 74 hours for his associates' time (more than the original 46.6 hours submitted), and 0 hours for his partners' time.

**19.** The order states "... in addition to the attorneys' fees and costs previously ordered,

the Court hereby re-taxes additional costs for the appeal and orders Goodyear ... to pay the Guardians Ad Litem's [sic] in the following amounts: ... Total: $30,000."

sumption that Goodyear's request for findings of fact extended the court's plenary jurisdiction. Thus, in the absence of a timely motion to modify, the court's plenary power over the judgment expired on November 24, 2002. Once a trial court loses plenary jurisdiction over its judgment, it becomes final and any modification to the judgment will be set aside as void. *Times Herald Printing Co. v. Jones,* 730 S.W.2d 648, 649 (Tex.1987) (per curiam). Therefore, the court's February 21, 2003, order modifying the judgment to award appellate fees was signed outside its plenary jurisdiction and is void.[20] *State ex rel. Latty v. Owens,* 907 S.W.2d 484, 485–86 (Tex.1995) (judicial action taken after court's jurisdiction has expired is a nullity). Accordingly, we reverse the award of appellate fees and render judgment that the ad litems take nothing on their claims for appellate fees.[21]

### CONCLUSION

Based on the record before us, we conclude there is factually insufficient evidence to support the trial court's judgment awarding $397,741.12 in aggregate fees to the six guardians ad litem. We further hold that the trial court did not have plenary power to enter an order modifying the judgment to award an additional $30,000 in appellate fees to the guardians ad litem. Accordingly, we reverse the award of $30,000 in appellate fees and render judgment that the ad litems take nothing on their claims for appellate fees,

and we reverse that portion of the judgment awarding $397,741.12 in aggregate ad litem fees and remand for further proceedings and re-calculation of the fees in a manner consistent with this opinion. The trial court's judgment is affirmed in all other respects.

Concurring opinion by SARAH B. DUNCAN, Justice.

I concur in the court's judgment but write separately because I feel compelled to express my shock and outrage at the billing practices exhibited in this case by these ad litems—all of whom are members of the State Bar of Texas and thus subject to the Rule of Professional Conduct 1.04(a), which unequivocally prohibits a lawyer from "charg[ing] ... an unconscionable fee." TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(a), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Vernon 1998). How could any lawyer defend billing for more than twenty-four hours in a day ... two to four hours to review a standard one-page deposition notice ... or five hours for sleeping? Billing practices such as these not only demonstrate why the legal profession in general—and ad litems in particular—are under siege but also, I believe, forcefully support my request to the full court to report these attorneys to the grievance committee.

---

**20.** On appeal, some of the ad litems argue the court had the power to "re-tax" the appellate fees as costs even after its plenary jurisdiction expired, citing *Operation Rescue–National v. Planned Parenthood of Houston,* 937 S.W.2d 60, 87 (Tex.App.-Houston [14th Dist.] 1996), *aff'd as modified,* 975 S.W.2d 546 (Tex.1998). The holding in *Operation Rescue* is limited to a motion to re-tax costs to correct the clerk's ministerial act in calculating the costs, and is distinguishable from an adjudication of additional costs not originally assessed. *Id.* From

our review of the record, it is clear that the court did not award appellate fees in the original judgment and sought to assess them after its plenary power had expired.

**21.** We have previously held that appellate fees may not be awarded to guardians ad litem for defending their fees on appeal. *Holt,* 144 S.W.3d at 597; *see also Gamez,* 894 S.W.2d at 757.