**In The**
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-20-00169-CV**

**B&G CRANE SERVICE, LLC, Appellant**

**V.**

**HECTOR BARRON, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF MIGUEL BARRON, JORGE BARRON, MIGUEL BARRON, MARIA BARRON, ISABEL BARRON, JACQUELINE M. BERRIOS, AS NEXT FRIEND OF A.M.B., AND MELISSA PEREZ AS NEXT FRIEND OF M.N.B., AND OSIEL ROCHA, Appellees**

**On Appeal from the 60th District Court**
**Jefferson County, Texas**
**Trial Cause No. B-198,493**

**MEMORANDUM OPINION**

In this appeal, we are asked to review the trial court's order of a guardian ad litem fee in the amount of $43,563.20. Appellant contends that the fee is not reasonable and necessary, as contemplated by Texas Rule of Civil Procedure 173.6(a), that the guardian ad litem exceeded the scope of his appointment, and that the record before the trial court contained no evidence or insufficient evidence to

1

support the fee award. For these reasons, Appellant contends that the trial court abused its discretion in awarding the fee in question. Based on our review of the record and prevailing legal precedent, we conclude that the trial court abused its discretion in awarding the ad litem fee; we therefore will reverse the decision of the trial court and render a decision that the guardian ad litem may not recover a fee from Appellant.

## Background

### A. Procedural Case History

Miguel Barron was fatally injured on or about May 11, 2016. Shortly thereafter, his family members filed suit against three defendants to recover damages attributable to his death. When the parties reached a settlement with two defendants, ExxonMobil Oil Corporation ("Exxon") and AltairStrickland, LLC ("Altair"), these two defendants and the next friends of the then minor plaintiffs requested the trial court to appoint a guardian ad litem pursuant to Texas Rule of Civil Procedure 173, so that the trial court could approve the minor settlements with these defendants. Appellant, B&G Crane Service, LLC ("B&G") was not a party to the agreed motion to appoint the guardian ad litem. The trial court granted the motion on April 19, 2018, the day after it was filed, and as requested, appointed Charlton Hornsby as the guardian ad litem "for Minor plaintiff."

2

On June 26, 2018, the trial court approved the settlement as to these two defendants, and the claims against these parties were then *severed and assigned a separate case number*.

Eventually, the case proceeded to trial against the only remaining defendant, B&G. After a jury rendered a verdict on liability and damages and, after variety of proceedings in the trial court and in this court, B&G settled the matter. At the time of the B&G settlement, M.N.B. was the sole remaining minor plaintiff, and the trial court approved the settlement as to M.N.B. at a hearing conducted on April 6, 2020.[1] During that hearing, Defendant objected to the ad litem fee that Hornsby was requesting, and the trial court postponed a hearing on that matter until April 22, 2020. Following the April 22, 2020 hearing regarding ad litem fees, the trial court approved the fee in the amount of $43,563.20, even though Hornsby had slightly reduced his fee request to account for some errors that B&G had called to his attention.

## B. Testimony at the April 22, 2020 Hearing

### 1. Testimony of Charlton Hornsby

Charlton Hornsby testified that he was originally appointed as guardian ad litem by order of the court dated April 19, 2018. After removing some apparently excessive and/or duplicative items from his bill he originally submitted to the court,

---

[1] We use pseudonyms or initials in place of the names of the plaintiffs who were minors at the time that the underlying suit was filed, to protect the minors' identities. Tex. R. App. P. 9.9(a)(3).

he requested the trial court to award him a fee of $39,100, representing 97.75 billable hours, billed at $400 per hour, plus a relatively token amount for expenses. Hornsby otherwise defended his fee application, noting his expertise and experience, as well as his customary billing practices and hourly rate. In particular, he stated that it was necessary for him to remain apprised of the progress of the case, including evaluating settlement offers and the probability of success at trial and on appeal, so that he could fulfill his role as guardian ad litem and advise the trial court as to the minor's best interests.

As for the scope of his ad litem appointment, Hornsby testified that although he did not read the April 18, 2018 motion to appoint him as guardian ad litem, he did read the April 19, 2018 order granting the motion. Based on his reading of the order, he believed that he was appointed pursuant to the agreement of all parties, including B&G. Hornsby further expressed his belief that he was protecting M.N.B.'s best interest by remaining involved with the case after the conclusion of the Exxon and Altair settlement, and that this continued involvement was authorized by the above-referenced order.

Hornsby confirmed that he had multiple conversations with both Byron Alfred, Plaintiffs' counsel, and with Bernie Daleo, the settlement consultant, about how best to structure and/or invest the minor's settlement proceeds, and further

noted that there was a potential conflict of interest between the minor and her mother, Melissa Perez, who was a party to the suit as the minor's next friend.[2]

### 2. Testimony of Byron Alfred

Mr. Alfred, Plaintiffs' attorney, testified that Hornsby was instrumental in bringing about M.N.B.'s settlement with B&G, in that he persuaded Perez to agree to the terms of the settlement structure. Alfred did not disagree with Hornsby's fee application and indicated that he never considered Hornsby to have been acting outside the scope of his proper role as a guardian ad litem.

### 3. Comments of Bernie Daleo

Mr. Daleo, the settlement consultant, advised the trial court that Hornsby was extensively involved in designing M.N.B.'s structured settlement, and that Hornsby went "above and beyond the call of duty[]" in his conduct as guardian ad litem.

## Standard of Review

We review a trial court's decision to award a guardian ad litem fee for an abuse of discretion. *Ford Motor Co. v. Chacon*, 370 S.W.3d 359, 362 (Tex. 2012) (per curiam). We must not substitute our judgment for the trial court's judgment unless the trial court's judgment was so arbitrary that it exceeded the bounds of reasonable discretion. *See id.* We review the evidence in the light most favorable to

---

[2] Ms. Perez did not sue in her individual capacity, but she did receive a portion of the settlement proceeds.

the trial court's judgment and draw all legitimate inferences from the evidence in a manner most favorable to the trial court's judgment. *See Cameron Int'l Corp. v. Guillory*, 445 S.W.3d 840, 845 (Tex. App.—Houston [1st Dist.] 2014, no pet.). We will not find an abuse of discretion if the trial court heard conflicting evidence and evidence appears in the record that reasonably supports the trial court's decision. *Dall. Anesthesiology Assocs., P.A. v. Tex. Anesthesia Grp., P.A.,* 190 S.W.3d 891, 896 (Tex. App.—Dallas 2006, no pet.). The trial court abuses its discretion when it misapplies the law to the "established facts, or when the evidence does not reasonably support the conclusion that the applicant has a probable right of recovery." *State v. Sw. Bell Tel. Co.,* 526 S.W.2d 526, 528 (Tex. 1975) (citations omitted).

## Analysis

The Texas Supreme Court noted in *Chacon* that "[a] guardian ad litem is an officer appointed by the court to assist in protecting a party's interests when that party's next friend or guardian appears to have an interest adverse to the party." *Chacon*, 370 S.W.3d at 362 (citing Tex. R. Civ. P. 173; *Land Rover U.K., Ltd. v. Hinojosa*, 210 S.W.3d 604, 607 (Tex. 2006)). The *Chacon* court further addressed the legal authority and role of a guardian ad litem explaining,

> Texas Rule of Civil Procedure 173 governs the procedure for appointing and compensating a guardian ad litem. Rule 173 requires that a guardian ad litem's appointment must be made by written order of the trial court. A guardian ad litem has the burden to ensure that his

6

services do not exceed the scope of the role assigned by the trial court. In the context of that appointment, a guardian ad litem may be reimbursed for reasonable and necessary expenses incurred and may be paid a reasonable hourly fee for necessary services performed.

370 S.W.3d at 361-362 (internal quotations and citations omitted).

## A. Revised Fee Application

Because Hornsby revised his fee application to request a total fee of $39,663.20, the trial court abused its discretion by awarding him an ad litem fee in his originally-requested amount of $43,563.20. If that discrepancy were the sole error in the trial court's judgment, we would be content to reverse the lower court's order and render a judgment awarding Hornsby a fee of $39,663.20. Because Appellant has called more serious errors to our attention, however, we must evaluate the matter in more depth.

## B. Hornsby Exceeded the Scope of His Appointment

Texas Rule of Civil Procedure 173 governs the appointment of a guardian ad litem. This Rule sets forth the proper role of the guardian ad litem, and contemplates that absent unusual circumstances, the guardian ad litem will have only a limited role in the case. *See* Tex. R. Civ. P. 173 cmts. 3, 4. During the April 22, 2020 hearing, Hornsby acknowledged the existence of case law applying this Rule and holding that when a guardian ad litem performs work that is either unnecessary or is duplicative of the plaintiff's attorney's efforts, the guardian ad litem will not be paid for performing that work. *Chacon*, 370 S.W.3d at 362; *Ford Motor Co. v. Garcia*, 363

7

S.W.3d 573, 580 (Tex. 2012); *Land Rover*, 210 S.W.3d at 607. The question before us, then, is whether Hornsby exceeded the scope of his appointment by performing work that was either not necessary to his function as a guardian ad litem or that was more properly within the province of Plaintiffs' retained attorney. In order to make this determination, we must identify the scope of Hornsby's appointment as a guardian ad litem. Because the scope of the appointment is not set out with particularity in the trial court's order of April 19, 2018, we must examine the context of the appointment, including the timing of it, to determine its scope. *Chacon,* 370 S.W.3d at 362 (*citing Garcia*, 363 S.W.3d at 577).

There is no dispute that Hornsby was appointed nearly two years after Plaintiffs filed suit, and approximately two months before the June 26, 2018 settlement hearing involving the then minor plaintiffs and Defendants Exxon and Altair. There is also no dispute that the motion to appoint Hornsby does not reference B&G, and that B&G was not a party to the settlement approved on June 26, 2018. In addition, Hornsby acknowledged that following the trial court's approval of the Exxon and Altair settlement, these two defendants paid him an agreed ad litem fee of $22,000.[3] Considering the timing of Hornsby's appointment as a guardian ad litem

---

[3] The record contains inconsequential discrepancies as to the exact amount of this agreed fee, but because these slightly-differing figures do not affect the outcome of this appeal, we have used the $22,000 figure that Hornsby acknowledged during the April 22, 2020 hearing.

*vis à vis* the settlement, and further considering the fact that the motion to appoint him stated that the claims had been settled, and referenced no parties other than the then minor plaintiffs, their next friends, and the two settling defendants (Exxon and Altair), we conclude that the trial court appointed Hornsby to act as the minor plaintiffs' guardian ad litem for the purpose of having their settlement approved as to Defendants Exxon and Altair, and for no other purpose. The temporary conflict of interest between the minor plaintiffs and their next friends therefore ceased when the settlement was approved as to Exxon and Altair, and Hornsby's duties as guardian ad litem also ceased at that time. *Goodyear Dunlop Tires N. Am., Ltd. v. Gamez*, 151 S.W.3d 574, 586-88 (Tex. App.—San Antonio 2004, no pet.). The ad litem's role ends when the conflict between the minor and his parents, guardian or next friend ceases to exist. *Brownsville–Valley Regional Medical Ctr. v. Gamez*, 894 S.W.2d 753, 755 (Tex.1995). Work performed outside the scope of the guardian ad litem's duties or after the conflict has been resolved will not be compensated. *Id.* at 754. The claims for which Hornsby was appointed were severed from the main case and assigned its own cause number. For that reason, Hornsby's continued activities in the remainder of the case were beyond the scope of his appointment as guardian ad litem and are not compensable. *Chacon,* 370 S.W.3d at 360.

Hornsby's contention that it was necessary for him to continue his involvement in the case to evaluate B&G's settlement offers was considered by the

Supreme Court in *Chacon* and expressly rejected. *Id*. at 362-63; *see also Jocson v. Crabb*, 133 S.W.3d 268, 271 (Tex. 2004). Hornsby was not appointed as a guardian ad litem until the parties had agreed to settlement terms as to Defendants Exxon and Altair, as shown by the motion to appoint him. If a guardian ad litem's involvement truly was essential to ongoing settlement negotiations, logic dictates that Hornsby, or another individual, would have been appointed earlier in the litigation process to evaluate any previous settlement offers that any defendant might have extended. Moreover, Hornsby had no guarantee that Plaintiffs' case against B&G would resolve by settlement or that he would be appointed as the guardian ad litem in the event that a settlement took place. If, for example, the trial court had appointed a different individual to serve as guardian ad litem regarding the B&G settlement, or if B&G's liability to Plaintiffs had been determined pursuant to a trial on the merits of the case, Hornsby would have had no claim to an ad litem fee because there would have been no conflict of interest between the minor plaintiff, M.N.B., and her next friend. Consequently, any work he performed after the conclusion of the Exxon and Altair settlement was beyond the scope of his original appointment and without court order appointing him for the claims against B&G before the work was performed.

Although it appears that the parties, including B&G, continued to treat Hornsby as a guardian ad litem long after the Exxon and Altair settlements were concluded, such conduct does not create a guardian ad litem appointment by

10

estoppel, by ratification, by waiver, or by means of any other legal theory, because a guardian ad litem appointment "must be made by written order." Tex. R. Civ. P. 173.3(b).[4] It is irrelevant to the disposition of this question that B&G lodged no objection to Hornsby's activities or his fees until the April 22, 2020 hearing after the trial court had approved the minor's settlement, because applicable Texas case authority consistently holds that an objection is timely if it is raised at the guardian ad litem's fee hearing.[5] *Gamez,* 151 S.W.3d at 582; *Jocson,* 133 S.W.2d at 270.

Hornsby's contention that his appointment as guardian ad litem was necessary to the integrity of the settlement approved on April 6, 2020 is likewise unpersuasive, because the lack of a guardian ad litem would have made that settlement approval *voidable*, not *void*. *Hungate v. Hungate*, 531 S.W.2d 650, 653 (Tex. Civ. App.—El Paso 1975, no writ). A voidable judgment may become final and will do so unless it is the subject of a successful direct attack; a void judgment, conversely, may be subject to a collateral attack. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010). The trial court's judgment approving M.N.B.'s settlement was not

---

[4] Hornsby did not assert any claim for quantum meruit nor do we address whether any such claim would be viable pursuant to Tex. R. Civ. P. 173.

[5] Hornsby's characterization of B&G's timely objection as a "gotcha" disregards established precedent. Instead, it was Hornsby's responsibility to determine the scope of his appointment as guardian ad litem. *Gamez*, 151 S.W.3d at 582.

appealed and is not void for lack of jurisdiction; it therefore has become final, regardless of the presence or absence of a guardian ad litem.

Because the appellate record makes it clear that Hornsby exceeded the scope of his April 19, 2018 appointment as guardian ad litem for the minor plaintiffs in the Exxon and Altair settlement, because the trial court made no written order appointing Hornsby as a guardian ad litem in the B&G settlement, and because a guardian ad litem appointment cannot be created by waiver, we are bound by the holding in *Chacon* and sustain Appellant's first three issues on appeal.

## Conclusion

Given our conclusion that the trial court abused its discretion in awarding Hornsby's ad litem fee because Hornsby exceeded the scope of his appointment, we need not address Appellant's additional contentions. *See* Tex. R. App. P. 47.1.

For this reason, the trial court's order ordering Appellant to pay a guardian ad litem fee is reversed, and it is ordered that the guardian ad litem, Charlton Hornsby, take nothing from Appellant, B&G Crane Service LLC.

AFFIRMED IN PART, REVERSED AND RENDERED IN PART.

_____
CHARLES KREGER
Justice

Submitted on January 26, 2022
Opinion Delivered June 9, 2022

Before Golemon, C.J., Kreger and Johnson, JJ.

12