**YOUNGSTOWN AREA JEWISH FEDERATION, Appellant**

v.

**William J. DUNLEAVY, Appellee.**

No. 05–06–00053–CV.

Court of Appeals of Texas, Dallas.

March 13, 2007.

Rehearing Overruled June 21, 2007.

Cathlynn H. Cannon, Wison Elser Moskowitz Edelman & Dicker, LLP, Dallas, for Appellant.

Douglas R. Hafer, Curnutt & Hafer, LLP, Arlington, William J. Dunleavy, Law Offices of William J. Dunleavy, P.C., Carrollton, Thomas B. Cowart, Law Offices of Thomas B. Cowart, P.C., Dallas, for Appellee.

Before Justices MORRIS, MOSELEY, and O'NEILL.

## OPINION

Opinion by Justice O'NEILL.

This appeal involves whether a trial court's award of $18,062.50 to a guardian ad litem is excessive. In several issues, appellant Youngstown Area Jewish Federation alleges the fee is unnecessary and excessive because it includes payment for services beyond the scope of a guardian ad litem's appointment. YAJF further challenges the trial court's findings, which it believes contributed to the excessive award, that it could have settled the lawsuit and objected to the ad litem's activities sooner. Because the trial court's order awarding William J. Dunleavy over $18,000 in fees clearly includes non-compensable work beyond the scope of a guardian ad litem's appointment, we reverse and remand this cause to the trial court for reconsideration of the guardian ad litem fee in light of this opinion.

## Background

In August 2001, the tip of eight-year-old Adrian Allen's left index finger was partially amputated when a bathroom door closed on it while he was at a Jewish community center in Youngstown, Ohio. At the time, his father, Artie Allen, worked as YAJF's executive director. Although Adrian incurred approximately $7500 in medical expenses, he fully recovered from the incident and has full use of his finger.

In April 2003, Artie filed a "friendly lawsuit" against YAJF alleging premises liability and negligence to prove up a settlement on behalf of Adrian. Because YAJF was concerned about a possible conflict with its former employee negotiating a settlement on his son's behalf,[1] YAJF filed a motion for appointment of a guardian ad litem. On May 27, 2003, the trial court determined an appointment was necessary for the "full protection of minor Plaintiff Adrian B. Allen's best interest" and appointed William J. Dunleavy as guardian ad litem. The order specifically stated he was "ordered to perform all necessary acts to represent the best interest of the minor."

YAJF offered to settle the suit for $5,000 in June 2003; however, Dunleavy informed the trial court he did not believe the settlement was in the minor's best interest. Because there was no longer a settlement and Artie no longer worked for YAJF, YAJF claims the conflict between the parties no longer existed, and Dunleavy's services were no longer required from this point forward. However, YAJF has not challenged the order it drafted appointing Dunleavy as a guardian ad litem, but only the order awarding his fees. As such, any argument regarding the propriety of his appointment is not properly before us. TEX.R.APP. P. 33.1.[2]

---

1. It is undisputed that at the time Artie filed the lawsuit he no longer worked for YAJF, and his family had moved to Texas.

2. Although the sufficiency of the appointment order is not properly before us, we note there is no evidence the potential conflicts in this case ever resolved themselves before final settlement. *See Borden, Inc. v. Martinez,* 19

On May 9, 2005, the trial court conducted a prove-up hearing and accepted the settlement proposal in which Adrian will receive five equal payments of $2,949.68 beginning August 1, 2011 through August 1, 2015. During this hearing, Dunleavy stated he was reluctant to ask the court to award him fees in an amount more than Adrian's settlement. He specifically proposed a fee of $9500 and $100 for costs; however, YAJF objected to any discussion of fees because he had not filed a verified fee application pursuant to Texas Rule of Civil Procedure 173.[3] The trial court later allowed Dunleavy to file a verified fee application, and YAJF filed written objections.

On August 29, 2005, the trial court held a hearing on the fee application. During the hearing, the trial judge determined she needed to voluntarily recuse herself from deciding the fees. Both parties agreed the hearing could continue before a different judge. On October 25, 2005, the trial court awarded Dunleavy $18,062.50 in guardian ad litem fees. YAJF appeals this order.

### Guardian ad Litem Fees

■ A guardian ad litem is entitled to a reasonable fee for his services to be taxed as costs. *See* Tex.R. Civ. P. 173.6. The amount of an ad litem fee award is within the trial court's sound discretion and will not be set aside absent a clear abuse of discretion. *Garcia v. Martinez,*

988 S.W.2d 219, 222 (Tex.1999); *Brownsville–Valley Reg'l Med. Ctr., Inc. v. Gamez,* 894 S.W.2d 753, 756 (Tex.1995). A trial court abuses its discretion when it acts without reference to any guiding rules and principles. *Garcia,* 988 S.W.2d at 222; *Gamez,* 894 S.W.2d at 756. A trial court abuses its discretion if it awards ad litem fees for work unrelated to an actual or potential conflict of interest or for work more appropriately performed by the plaintiff's attorney. *Goodyear Dunlop Tires N. Am., Ltd. v. Gamez,* 151 S.W.3d 574, 583 (Tex.App.-San Antonio 2004, no pet.); *see also Land Rover U.K., Ltd. v. Hinojosa,* 210 S.W.3d 604, 609 (Tex.2006) (holding that guardian ad litem's extensive advice to plaintiff's attorney and daily involvement in case exceeded formal role of guardian ad litem); *Jocson v. Crabb,* 196 S.W.3d 302, 307 (Tex.App.-Houston [1st Dist.] 2006, no pet.).

■ A trial court also abuses its discretion in awarding ad litem fees if there is no evidence or insufficient evidence to support the fee award. *Gamez,* 151 S.W.3d at 580. In reviewing the ad litem fee, the appellate court may draw upon the common knowledge of the justices and their experiences as lawyers and judges in support of the fee. *Id.*

Former Texas Rule of Civil Procedure 173 stated that when a minor "is represented by a next friend or guardian who appears to the court to have an interest

---

S.W.3d 469, 472 (Tex.App.-San Antonio 2000, no pet.) (trial court should appoint ad litem when there is a potential conflict). Here, Artie worked for YAJF at the time of his son's injury; however, he no longer was employed by YAJF when he filed the "friendly lawsuit." Although YAJF stipulated there was a potential conflict between the father and his son and requested the appointment of a guardian ad litem, the exact basis for the conflict was never articulated. Certainly the former relationship between YAJF and Artie might raise

a question about his fiduciary representation of his child or his possible involvement as a third party defendant; however, as stated above there is no evidence that these potential conflicts ever resolved themselves prior to settlement.

3. We note that the first "agreed judgment" signed by the court on May 9, 2005, but not approved or signed by the parties, provided for $9500 in fees and $100 in costs.

adverse to such minor, ... the court shall appoint a guardian ad litem for such person and shall allow him a reasonable fee for his service...." TEX.R. CIV. P. 173 (1943, amended 2005). On January 27, 2005, the Supreme Court of Texas revised rule 173, effective February 1, 2005 for all pending cases. *Hinojosa,* 210 S.W.3d at 607. Although the revisions to rule 173 clarify the role of a guardian ad litem, the role was defined well before the revisions.[4] *Id.*

 A guardian ad litem is not an attorney for the child, but an officer appointed by the court to assist in protecting the child's interest when a conflict arises between the child and the child's guardian or next of friend. *Id.; Jocson v. Crabb,* 133 S.W.3d 268, 271 (Tex.2004). As the personal representative of the minor, a guardian ad litem is required to participate in the case only to the extent necessary to protect the minor's interest and should not duplicate the work performed by the plaintiff's attorney. *Jocson,* 133 S.W.3d at 270–71; *see also* TEX.R. CIV. P. 173.7 cmt. 3, 4. If a guardian ad litem performs work beyond the scope of this role, such work is non-compensable. *Hinojosa,* 210 S.W.3d at 607; *Gamez,* 894 S.W.2d at 756–57. However, an ad litem may be compensated a reasonable fee for performing necessary services within the guardian ad litem's role, and a reasonable hourly rate multiplied by the number of hours necessarily spent yields a reasonable fee. *Hinojosa,* 210 S.W.3d at 608.

Here, Dunleavy provided testimony of his qualifications, the amount of time he spent representing the minor's interests, and the reasonableness of his fee. Based on his testimony, the trial court acted within its discretion in determining the reasonableness of Dunleavy's hourly rate. However, the trial court abused its discretion in concluding that Dunleavy performed the duties of a guardian ad litem for a total of 12.8 hours in 2003 and 63.9 hours in 2004 and 2005. A review of Dunleavy's verified fee application reveals several entries that clearly go beyond the scope of a guardian ad litem's duties. *See, e.g., Gamez,* 151 S.W.3d at 584–85.[5]

 For example, he traveled to the SMU law library to conduct research regarding Ohio law and reviewed case law provided by Doug Hafer, the minor's attorney. Such activities not only duplicated the work performed by Hafer, but also exceeded his role as the ad litem since such research was more appropriately performed by Hafer.

 He also billed for obtaining Adrian's medical records. We recognize that a guardian ad litem's duty includes evaluating and reviewing documents reflecting the damages suffered by the minor for purposes of adequate settlement negotiations; however, many of Dunleavy's billing entries include time for telephone calls and letters to obtain the records without any explanation of why such efforts were

4. Because the outcome would be the same under either version of the rule, we need not determine whether former Rule 173 or the amended rule applies to this appeal. Both versions mandate that an ad litem may only be compensated for fees that are incurred as a result of an actual or potential conflict of interest and are reasonable. *See* TEX.R. CIV. P. 173.4; *Gamez,* 151 S.W.3d at 583 (discussing the mandates of rule 173 before February 1, 2005).

5. Although Dunleavy contends the broad language of the order appointing him guardian ad litem, which states he is to "perform all necessary acts to represent the best interest of the minor," allows him great latitude in the performance of his duties, an ad litem is not allowed to step into the role of a plaintiff's attorney regardless of a potentially broad order.

necessary. These activities are normally more appropriate for a plaintiff's attorney. Therefore, in this case they are non-compensable.[6] *See Gamez,* 151 S.W.3d at 584.

■ Likewise, Dunleavy described the reason for certain telephone calls and meetings as "attorney client privilege." Under Texas Rule of Civil Procedure 173.5, "communications between the guardian ad litem and the party, the next of friend or guardian, or their attorney are privileged as if the guardian ad litem were the attorney for the party." TEX.R. CIV. P. 173.5. As such, any communications between Dunleavy, Artie and Adrian Allen, and Hafer are the only communications that fall within the protections of rule 173.5. Thus, his "attorney client privilege" entries for communications to Carol Krayenhagen, Mona Allen, and Neil Johnson do not fall within the rule's protections and do not establish that the work was reasonable and necessary to protect Adrian's best interests.

■ Although we have provided these specific examples of work clearly exceeding the scope of Dunleavy's appointment as a guardian ad litem, these examples are not all-inclusive. On remand, the trial court should reconsider Dunleavy's entire verified fee application and only compensate him for the tasks necessary to protect Adrian's interests and tasks that do not duplicate the work more properly performed by Hafer. *Jocson,* 133 S.W.3d at 270, 271; *City of Houston v. Woods,* 138 S.W.3d 574, 580 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (noting a trial court is in a better position than an appellate court to determine where the role of an ad litem ends and that of plaintiff's counsel begins).

Thus, we sustain YAJF's first, second, and fifth issues.

### Findings of Fact Challenges

In issues three and four, YAJF challenges the following two findings of the trial court.

Defendant's efforts to delay resolution of the case did unnecessarily delay the settlement of the lawsuit for nearly two years and Defendant's conduct, taken with the already identified conflict between Adrian B. Allen and Artie Allen, required the continued involvement of the Guardian ad litem in the action.

While undertaking to delay resolution of the action, Defendant never objected to the service of the Guardian ad litem, nor did Defendant seek to limit the Guardian ad Litem's participation that occurred pursuant to Court order, until Defendant made its objection to the Guardian ad Litem's fee request at the hearing on May 9, 2005.

■ First, although the trial court's Final Judgment includes these and other statements that could be interpreted as findings of fact, the above "findings" do not meet the requirements of Texas Rule of Civil Procedure 299a, which requires such findings to be filed separately from the judgment. TEX.R. CIV. P. 299a; *Casino Magic Corp. v. King,* 43 S.W.3d 14, 20 n. 6 (Tex.App.-Dallas 2001, pet. denied). Accordingly, we use the standard of review applicable to cases where no findings have been requested or filed. *Casino Magic Corp.,* 43 S.W.3d at 20.

■ When no findings of fact or conclusions of law are requested or filed, we imply all necessary findings in support of

---

**6.** We note that Dunleavy's entries establish that he billed 1.2 hours reviewing medical records to represent Adrian's best interests. This is a legitimate, compensable activity. However, as noted above, the 2.5 hours billed for obtaining them are not compensable based on the record before us.

the trial court's judgment. *Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 83 (Tex.1992). However, when a reporter's record is included in the record on appeal, the implied findings may be challenged for legal and factual sufficiency. *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989) (per curiam).

■■■ When, as in this case, the appellant is challenging the legal sufficiency of the evidence to support a finding on which it has the burden of proof, the appellant must demonstrate on appeal that the evidence conclusively establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001). In reviewing a "matter of law" challenge, the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* The point of error should be sustained only if the contrary proposition is conclusively established. *Id.*

Here, YAJF contends the trial court improperly considered its alleged efforts to unreasonably and unnecessarily delay the resolution of the case when awarding an excessive fee. Dunleavy argues he was required to continue his representation; therefore, YAJF is required to pay the costs necessarily associated with its effort to drag the case on for years.

■■■ Guardian ad litem fees are not a sanction for wrongful acts by defendants. But if the acts of the defendants, wrongful or not, prolonged the proceedings and necessitated continued guardian ad litem services, those services are compensable to the extent they are reasonable and necessary. *See e.g., Jocson,* 133 S.W.3d at 270 (holding a guardian ad litem is required to

participate in the case only to the extent necessary to protect the minor's interest and should not duplicate the work performed by the plaintiff's attorney). However, because we have already determined the trial court compensated Dunleavy for work outside the scope of his appointment, we need not address YAJF's third issue.

■■■ In its fourth issue, YAJF contends the trial court justified its fee award in whole or in part because YAJF never objected to Dunleavy's services or sought to limit his participation until the prove-up hearing. A defendant, however, need not object to an ad litem's services as outside the proper scope prior to the fee hearing. *Jocson,* 133 S.W.3d at 270 (defendants did not waive objection to ad litem's attendance at depositions and review of deposition notices and correspondence as beyond scope of ad litem's role by raising first objection at the fee hearing); *see also Gamez,* 151 S.W.3d at 582. The record conclusively establishes as a matter of law that YAJF properly objected to the guardian ad litem fees at the May 9, 2005 prove-up hearing, and it did not have a duty to object earlier. *Gamez,* 151 S.W.3d at 582 (noting guardian ad litem should ensure that his services do not exceed the limited scope of his role). Thus, any reliance on this "finding" by the trial court in awarding fees is insufficient. We sustain YAJF's fourth issue.

## Conclusion

Having sustained four of YAJF's issues, we reverse and remand this cause to the trial court for reconsideration of the guardian ad litem fees in light of this opinion.