COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | |
| FORD MOTOR COMPANY, | | |
| | § | |
| Appellant, | | No. 08-08-00173-CV |
| | § | |
| v. | | Appeal from |
| | § | |
| PATRICIA CHACON, INDIVIDUALLY | | County Court at Law No. 6 |
| AND AS INDEPENDENT | § | |
| ADMINISTRATOR AND PERSONAL | | of El Paso County, Texas |
| REPRESENTATIVE OF THE ESTATE | § | |
| OF OSCAR CHACON, DECEASED, | | (TC #2005-5920) |
| OSCAR CHACON, SR., AND PATRICIA | § | |
| CHACON AS NEXT FRIEND OF | | |
| VALERIE CHACON, MINOR, | § | |
| | | |
| Appellees. | § | |

# **O P I N I O N**

We consider today the propriety of a fee award to a guardian ad litem in a wrongful death and survival action against Ford Motor Company and other defendants. Those claims were fully settled and are not at issue here. On appeal, Ford challenges the $17,087 awarded to G. Daniel Mena, who was appointed for the minor plaintiff. We reverse and render judgment for Mena in the amount of $10,562.50.

## **FACTUAL SUMMARY**

This case arose from a tragic automobile accident involving a 1998 Ford Explorer that rolled over on Interstate Highway 25 when the tread on the right rear tire separated. Oscar Chacon, a passenger in the vehicle, sustained fatal injuries. His wife, Patricia Chacon, brought this wrongful

death and survival action against Ford Motor Company, Pirelli Tire Corporation, and Darrel Brown.[1]

She sued individually, on behalf of her husband's estate, and on behalf of their minor daughter,

Valerie Chacon. The lawsuit was assigned to the 120th District Court. Plaintiffs alleged products

liability claims against Ford and Pirelli Tire. They also alleged that the owner of the vehicle was

liable because he had negligently entrusted it to a "reckless driver" who was operating it at the time

of the accident. The decedent's father, Oscar Chacon, Sr., later joined the lawsuit as an additional

plaintiff.

After the case had been on file almost a year, Plaintiffs informed the court that they had

reached a "tentative settlement" with Cooper Tire, against whom they were then asserting their

claims for the defective tire. In connection with that settlement, Plaintiffs requested the appointment

of a guardian ad litem for Valerie Chacon. The trial court promptly signed an order appointing Mena

to that role. The friendly suit hearing, severance, and judgment resolving those claims occurred in

October 2006. At that time, Mena was awarded a fee of $11,000 for serving as guardian ad litem

in connection with the Cooper settlement.

At the friendly suit hearing in the Cooper litigation, Ford tendered a settlement offer that

mirrored the terms of the Cooper settlement. According to Mena, Mrs. Chacon was not satisfied

with the offer and from that moment in the Ford litigation, her interests conflicted with those of her

daughter. The attorneys met in chambers with Judge Luis Aguilar, the then-presiding judge of the

120th District Court. In a "highly volatile" and emotional encounter, Judge Aguilar advised

Mrs. Chacon that she was foolish not to take the offer and that her decision was not in Valerie's best

interest. The case was set for trial a few weeks later in November 2006, but it was continued at

---

[1] Because this case was filed in August 2005, it is governed by the current amendments to Texas Rule of Civil Procedure 173, which became effective on February 1, 2005. *See* TEX.R.CIV.P. 173.

Ford's request. Having lost his re-election bid, Judge Aguilar left the bench at the end of December 2006. Because of concerns that the case would not proceed to trial for at least a year, the Ford litigation was transferred from the 120th District Court to County Court at Law No. 6, Judge M. Sue Kurita presiding.

In September 2007--ten days before the final trial setting--Judge Kurita denied Ford's motion for continuance and ordered mediation with regard to the Plaintiffs' claims against Ford and Darrell Brown. That mediation was successful, and the parties reached a settlement. Again acting as guardian ad litem for Valerie, Mena submitted an ad litem report recommending the settlement. He attached a document entitled "Billable Hours Mena Ad Litem-Chacon vs. Ford." This document did not indicate an hourly rate or the total amount Mena sought in attorney's fees. But it listed time entries totaling 87.25 hours, with additional time which would be incurred at attending the friendly suit hearing and in handling the Order of Investment. The chronology of these time entries began in August 2006. Ford asked for an evidentiary hearing.

On the morning of the hearing, Mena filed a verified Report of Hours that presented time entries totaling 80.75 hours for which he sought compensation. The trial court awarded Mena fees of $17,087. This appeal follows.

**GUARDIAN AD LITEM FEES**

Ford brings four issues for review, complaining that the trial court abused its discretion by awarding excessive guardian ad litem fees. We address each point in turn.

**Standard of Review**

A guardian ad litem must be appointed for a minor party when a conflict of interest exists between the child and the child's guardian or next friend. TEX.R.CIV.P. 173.2(a); *Brownsville-Valley Reg. Med. Ctr. v. Gamez*, 894 S.W.2d 753, 755 (Tex. 1995). However, the

conflict need not be actual; potential for conflict during trial or settlement negotiations also authorizes the appointment of a guardian ad litem. *Borden, Inc. v. Martinez*, 19 S.W.3d 469, 472 (Tex.App.--San Antonio 2000, no pet.); *Clark v. McFerrin*, 760 S.W.2d 822, 828 (Tex.App.--Corpus Christi 1988, writ denied). Once appointed, the ad litem acts as both an officer and advisor to the court. TEX.R.CIV.P. 173.4(a). When a settlement of the child's claim is proposed, the guardian ad litem has "the limited duty to determine and advise the court whether the settlement is in the party's best interest." TEX.R.CIV.P. 173.4(c). As the personal representative of the minor, he may seek reasonable compensation for necessary services performed. TEX.R.CIV.P. 173.6(a). "A reasonable hourly rate multiplied by the number of hours spent performing necessary services within the guardian ad litem's role yields a reasonable fee." *Land Rover U.K., Ltd. v. Hinojosa*, 210 S.W.3d 604, 608 (Tex. 2006)(per curiam). Because the guardian ad litem has a limited role, not all litigation services are necessary or required. *Id.* at 607 (guardian ad litem may not recover fees for services that duplicate work performed by plaintiff's attorney); *Brownsville-Valley Reg. Med. Ctr.,* 894 S.W.2d at 756-57 (guardian ad litem may not recover fees for services that duplicate duties imposed on the trustee and the minor's parents). "If a guardian ad litem performs work beyond the scope of this role, such work is non-compensable." *Land Rover U.K., Ltd.*, 210 S.W.3d at 607. We review a fee award under an abuse of discretion standard based on the sufficiency of the evidence that the fee was reasonable and necessary. *Id.*; *Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex. 1999)(per curiam). A trial court abuses its discretion in "ordering payment of a fee in excess of the product of the hours spent and the hourly fee supported by the testimony using the *Andersen* factors." *Land Rover U.K., Ltd.*, 210 S.W.3d at 608, *referencing Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

The amount of the fee is left to the trial court's discretion and will not be overturned absent

evidence that the trial court abused its discretion. *Garcia*, 988 S.W.2d at 222; *Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 794 (Tex. 1987). To determine a reasonable fee, a trial court applies the factors generally used to determine the reasonableness of attorney's fees. *Garcia*, 988 S.W.2d at 222. These factors include:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
>
> (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id*., *citing Arthur Andersen v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997), *quoting* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04, reprinted in TEX. GOV'T CODE, tit. 2, subtit. G app. A (TEX. STATE BAR R. art. X, § 9). To apply these factors, a reviewing court "may draw upon the common knowledge of the justices and their experience as lawyers and judges to view the matter in light of the evidence and the amount in controversy." *Borden*, 19 S.W.3d at 471; *see generally Garcia*, 988 S.W.2d at 219; *Brownsville-Valley Reg. Med. Ctr.,* 894 S.W.2d at 753.

### The Cooper Tire Settlement

In Point of Error One, Ford complains that Mena's time records included 38.00 hours attributable to his services in connection with the Cooper Tire settlement. Ford maintains that Mena

was compensated for those services in 2006 when he recovered an $11,000 fee award. During the hearing, Mena addressed the time entries involving both Cooper Tire and Ford.

> Q. All this time up until October 10th, 2006, for example, you had the hearing on the judgment and severance order signed on October 10th, you have that exact same time for Cooper Tire, don't you?
>
> A. I was also assuring myself that Ford Motor Company was not let out of this case, yes, sir. The answer is yes.
>
> . . .
>
> Q. Everything that you have got from August until October 10th, 2006, you may be billing to Ford but you did the same work for Cooper Tire?
>
> A. I did some of the work simultaneously, sir, for the Defendant Ford, Defendant Brown, and Defendant Cooper.
>
> Q. I want you to go from all your billings from August 21st of 2006 to October 20th 2006, and tell me which were ones you never billed Cooper Tire for?
>
> A. I couldn't tell you. I don't have that file. I told you.

Judge Kurita explained that she would award Mena fees for all 80.25 hours submitted based on an hourly rate of $350 per hour, except for two small entries totaling .50 hours. To solve the "double billing" problem, the court then reduced the fee by $11,000 to account for what Mena had already been paid:

> THE COURT: I'm going to go ahead and award $350.00 for 80.25 hours. We are deleting the point -- the time on the conference regarding ad litem fees, and we are also giving credit for the $11,000 that was paid by Cooper Tire already so that there is not an issue of double billing. And the amount that I have left is $17,087.00.

It is thus clear that the trial court did not intend to award fees for the work Mena performed on the Cooper Tire settlement. Instead, the court gave Ford a credit of $11,000. We overrule Point of Error One.

We recognize, however, that because the trial court awarded fees at the rate of $350 per hour,

the $11,000 credit is insufficient.  We readdress this portion of the argument in connection with our analysis of Point of Error Four.

**Time Records for Period Between**
**Settlement with Cooper Tire and Ford Motor Mediation**

In Points of Errors Two and Three, Ford challenges the hours that Mena billed during the year between the settlement with Cooper Tire and the mediation with Ford.  Ford emphasizes that there was no need for a guardian ad litem during that time because there was no pending settlement offer.

*Services Rendered*

At the evidentiary hearing, Mena's Report of Hours was admitted into evidence:

| | | |
|---|---|---|
| 10-10-06 | Motion to Quash and Review Release | .50 |
| 10-10-06 | Motion for Summary Judgment | 1.0 |
| 10-16-06 | Motion to Quash | .50 |
| 10-17-06 | Review Kennedy correspondence to Ms. Chacon | .50 |
| 10-18-06 | Review Kennedy correspondence to Chambless | .25 |
| 10-18-06 | Review court Notice of Setting | .25 |
| 10-19-06 | Motion Summary Judgment | 1.5 |
| 10-20-06 | Review Jeff Ray authorization settlement | .25 |
| 10-23-06 | Review compel motion Dr. Juan Herrera | .25 |
| 10-25-06 | Final pretrial | 1.0 |
| 10-30-06 | Motion hearing compel | 1.0 |
| 11-01-06 | Motion to strike witness | 1.0 |
| 11-01-06 | Discussion with Judge on motion to transfer | 1.0 |

| | | |
|---|---|---|
| 11-01-06 | Discussion with Judge Kurita for acceptance of transfer | .50 |
| 12-05-06 | Review Kurita order on trial setting | .25 |
| 12-11-06 | Review Prichard correspondence on pre-trial | .25 |
| 12-13-06 | Review Notice of hearing status | .25 |
| 1-08-07 | Status hearing | 2.0 |
| 1-10-07 | Review court order pre-trial order and charge | .50 |
| 1-22-07 | Review and approval discovery control plan | .50 |
| 02-26-07 | Review Prichard proposed Rule 11 | .25 |
| 02-28-07 | Pro Hac Vice Order reviewed | .25 |
| 03-08-07 | Final pre-trial | 1.5 |
| 05-23-07 | Review Jeff Ray correspondence on strike designated Witness | .25 |
| 06-01-07 | Review Prichard Notice of Deposition dates | .25 |
| 06-01-07 | Review Ford Motion to Compel | .75 |
| 06-09–07 | Review Ford Reply to Response to Compel | .50 |
| 06-12-07 | Motion to Compel | 1.0 |
| 06-14-07 | Review Correspondence Prichard to Midlo | .25 |
| 06-15-07 | Hearing on Independent Medical evaluation | 1.0 |
| 06-19-07 | Review Correspondence Ford expert deposition | .25 |
| 06-26-07 | Review Jeff Ray correspondence to strike Shapley | .25 |
| 06-28-07 | Motion to strike witness | 1.0 |
| 07-13-07 | Review Prichard correspondence Rule 11 | .50 |
| 07-23-07 | Review Karen Gold report | 1.5 |

| | | |
|---|---|---|
| 07-23-07 | Review correspondence Prichard paralegal on Lee Deposition | .25 |
| 07-27-07 | Review Notice of appearance additional counsel | .50 |
| 08-01-07 | Review Chambless correspondence | .25 |
| 08-23-07 | Final pre-trial | 2.0 |
| 08-31-07 | Review emergency motion for continuance | 1.5 |
| 09-04-07 | Review correspondence | .25 |
| 09-13-07 | Review Ford Motor Motion to Strike designated and compel trial deposition and summary judgment | <u>2.0</u> |

$$29.50^2$$

## The Rules

Rule 173.4 of the Texas Rules of Civil Procedure outlines the role of a guardian ad litem:

(a) *Court Officer and Advisor*. A guardian ad litem acts as an officer and advisor to the court.

(b) *Determination of Adverse Interest*. A guardian ad litem must determine and advise the court whether a party's next friend or guardian has an interest adverse to the party.

(c) *When Settlement Proposed*. When an offer has been made to settle the claim of a party represented by a next friend or guardian, a guardian ad litem has the limited duty to determine and advise the court whether the settlement is in the party's best interest.

(d) *Participation in Litigation Limited*. A guardian ad litem:

> (1) may participate in mediation or a similar proceeding to attempt to reach a settlement;

> (2) must participate in any proceeding before the court whose purpose is to determine whether a party's next friend or guardian has an interest adverse to the party, or whether a settlement of the party's claim is in the party's best interest;

---

[2] Our arithmetic varies from Ford's by one hour.

(3) must not participate in discovery, trial, or any other part of the litigation unless:

(A) further participation is necessary to protect the party's interest that is adverse to the next friend's or guardian's, and

(B) the participation is directed by the court in a written order stating sufficient reasons.

TEX.R.CIV.P. 173.4. The comments to Rule 173 also address the ad litem's responsibility:

3. The rule contemplates that a guardian ad litem will be appointed when a party's next friend or guardian appears to have an interest adverse to the party because of the division of settlement proceeds. In those situations, the responsibility of the guardian ad litem as prescribed by the rule is very limited, and no reason exists for the guardian ad litem to participate in the conduct of the litigation in any other way or to review the discovery or the litigation file except to the limited extent that it may bear on the division of settlement proceeds. *See Jocson v. Crabb*, 133 S.W.3d 268 (Tex. 2004)(per curiam). A guardian ad litem may, of course, choose to review the file or attend proceedings when it is unnecessary, but the guardian ad litem may not be compensated for unnecessary expenses or services.

4. Only in extraordinary circumstances does the rule contemplate that a guardian ad litem will have a broader role. Even then, the role is limited to determining whether a party's next friend or guardian has an interest adverse to the party that should be considered by the court under Rule 44. In no event may a guardian ad litem supervise or supplant the next friend or undertake to represent the party while serving as guardian ad litem.

TEX.R.CIV.P. 173.7 cmt 3, 4.

## **Pertinent Authority**

We understand the historical controversy over hefty ad litem fees. For example, in *Land Rover U.K., Ltd.*, guardian ad litem Juan Hinojosa was awarded $100,000 for the work he performed in his appointed capacity. 210 S.W.3d 604, 608 (Tex. 2006)(per curium). Hinjosa testified that he talked to someone from the plaintiffs' attorney's office almost every day "to discuss strategy and prepare for trial." Specifically, he helped engineer a trial strategy to address the "empty chair" of the settling defendant. *Id.* The court concluded that Hinojosa gave extensive advice to the plaintiffs'

attorney that was beyond the formal role of a guardian ad litem. *Id*. at 609. This included daily consultations about trial strategy. *Id*. The court noted that even though the services may indeed have benefitted the minor, they were within the duties of the attorney representing the minor in the litigation and not additional fees to be assigned as costs payable to a guardian ad litem. *Id*., *citing Brownsville-Valley Reg. Med. Ctr.*, 894 S.W.2d at 756-57 (holding the guardian ad litem may not recover fees for post-judgment services because they were not necessary to representing the minor and they duplicated duties imposed on the trustee and the minor's parents).

Similarly, in *Magna Donnelly Corp. v. DeLeon*, the appellants argued that the trial court abused its discretion by awarding the guardians ad litem compensation for tasks that were more appropriately performed by the children's attorney. 267 S.W.3d 108, 112 (Tex.App.--San Antonio, 2008, no pet.h.). One of the ad litems, Sylvia Rodriguez, testified that she spent approximately ten hours locating and reviewing the "very, very lengthy file," placing several calls to the plaintiffs' attorney "to figure out what had happened," and speaking with the other ad litems "regarding the rest of the children." *Id*. Rodriguez spent two hours with her client and his mother discussing "the judgment, the motion to discover, and the effect of the release forms." *Id*. Rodriguez explained these matters to the mother, even though she knew the attorney already had, because it was her job as an ad litem to make sure they understood. *Id*. A second ad litem, Grady Roberts, spent 12 to 15 total hours reviewing the "whole file," including discovery, pleadings, and correspondence; talking to the plaintiffs' attorney or his office "a number of times;" discussing the matter with the other two ad litems; and meeting with his client and her mother on one occasion for approximately one hour, at which time he warned the minor about the hazards of spending her money quickly. *Id*. The court concluded that the guardians ad litem took on tasks that were more appropriately performed by the children's attorney, thereby exceeding their limited roles. *Id*. In its analysis, the court criticized the

ad litems for spending a majority of their time obtaining and reviewing the "lengthy" case file. *Id*. Neither Rodriguez nor Roberts clarified exactly what was reviewed or why such an extensive review was necessary when none of the minors had pending claims for personal injuries. *Id*. at 113. The record did not reflect proof of particular legal services that were rendered to evaluate the propriety and fairness of the proposed settlement. *Id*. The court concluded that the fees were improper because the services rendered were either unnecessary or fell outside the scope of a guardian ad litem's role. *Id*.

And in *Youngstown Area Jewish Federation v. Dunleavy*, the Dallas Court of Appeals found that the guardian ad litem, William Dunleavy, went beyond the scope of his duties. 223 S.W.3d 604, 609 (Tex.App.--Dallas 2007, no pet. h.). The record showed that Dunleavy traveled to SMU law library to conduct research regarding Ohio law and reviewed case law provided by the minor's attorney. *Id*. He also billed for obtaining the minor's medical records. *Id*. The court recognized that an ad litem's duties include evaluating and reviewing documents reflecting the damages suffered by the minor for purposes of adequate settlement negotiations; however, the billing entries included time for telephone calls and letters to obtain the records without any explanation of why such efforts were necessary. *Id*. The court found these activities to be non-compensable because they were more appropriate for the minor's attorney. *Id*. at 610. The court remanded the case, ordering that the trial compensate Dunleavy only for the tasks necessary to protect the minor's interest and tasks that did not duplicate the work more properly performed by the attorney. *Id.*

### The Ad Litem Report

We cannot review the propriety of the fee award without considering the ad litem's recommendation to the trial court. Mena prepared a six page report in which he noted that Valerie Chacon suffered the loss of her father on her fifteenth birthday as she was planning her quincenera.

She was first evaluated by a clinical psychologist in Edinburg, Texas, who diagnosed the child as suffering from major depression with anxiety. Valerie was later evaluated by Dr. Karen Gold at Ford's behest. Mena reported that Valerie had become much more dependent upon her mother and had attended every court hearing as well as meetings with psychologists, experts, and attorneys. She looked to her mother for guidance in assessing the value of any potential settlement. The minor was "candid in her assessments of her losses, very soft spoken, and . . . still burdened with the loss of her father." She was consoled by the presence of her father's ashes in the living room and felt his presence in her home every day. While she denied adjustment problems, she recognized that her prolonged grief had created some social withdrawal.

Mena analyzed the settlement offer and weighed the risks of proceeding to trial. He ultimately recommended that the trial court approve the settlement. Because the settlement required a confidentiality agreement, the amount of recovery is not disclosed in the record.

## The Trial Court's Knowledge

Because we must review the order for an abuse of discretion, we think Judge Kurita's own knowledge of the conflicts of interest warrant mention. Because her procedural recitation is precise and articulate, we quote it at length.

> THE COURT: [Counsel] I think you are in a very bad disadvantage because you came into the case at the friendly suit and did not follow this case from the inception. And I supposed [sic] that I am probably in the same position you were but not as bad as you were since I took this case from the 120th. From the moment that I took this case, it has been very contentious. It was very bad because the plaintiff at sometimes indicated that she had no confidence not only in her own counsel, but in the entire system. And it was represented at some of the pre-trial hearings and the status conferences that she didn't care if she got zero, that her position was that she was going to make the individuals that she thought were responsible for her husband's death, at least -- well, she wanted justice for that. And she didn't care if she was zeroed out, but she wanted her day in court. That certainly was a terrible position for the minor when there was an offer on the table. Because of the Cooper Tire settlement, financially, the mother and the child had some financial security. And

that they were going to roll the dice and it came up with zero, the mother really didn't care. But she wanted to make sure, or at least she wanted to make sure, that she had her day in court, and her husband had some justice, and she was out for blood. Not necessarily money, but she wanted to hold Ford's feet to the fire. I know that there were attempts to settle and mediate this case on numerous occasions. And every time they fell short usually [with] the plaintiff leaving the mediation, or at least indicating that she had no confidence in the system, no confidence in the courts, no confidence in the attorneys. And after her conversations with the judge of the 120th, who told her that she was a fool not to settle, and that she was hurting the child, she had lost confidence in the judiciary as well. It wasn't until last summer with the efforts of Mr. Mena, mainly, that Ms. Chacon was, I suppose her fears were soothed. She became less emotional and more rational as to what was going to be in the best interests of the child. The attendance by the ad litem at these hearings, I think, was extremely important because it was critical as to what the outcome was eventually going to be in the case.

## Analysis

The crux of the issue is when the conflict of interest arose between Mrs. Chacon and Valerie. Ford contends there was no conflict until there was a settlement offer on the table and that the settlement did not arise until mediation on September 20, 2007. Yet the record clearly reveals uncontradicted testimony that Ford tendered an offer on the date of the friendly suit in the Cooper Tire litigation. We also have a vivid description of how Mrs. Chacon was confronted by Judge Aguilar that very day and told that she was a fool if she did not accept the offer. She did not follow his advice. Instead she stormed out of the conference and took a position that directly conflicted with her daughter's interest. She wanted blood, not money, even if that meant that Valerie received nothing from Ford. Ford does not mention this first offer, or the volatile emotional cascade that followed. This is the most glaring flaw in Ford's argument.

A second flaw relates to Dr. Karen Gold's examination of Valerie. Mena noted in his report that Dr. Gold evaluated the child at Ford's request. Mena's time records reveal that he reviewed Dr. Gold's written report on July 23, 2007 and billed 1.5 hours to the file. Ford does not want to pay for these services because at the time Mena received the report, there was purportedly no settlement

offer on the table and no potential conflict of interest. Even if we were to discount the first offer and Mrs. Chacon's reaction to it, we are still left to ponder three questions. Should Mena have put aside a psychological evaluation of his own client on the day he received it? If he had waited until the mediation to read it, would Ford be willing to pay for it? How could he possibly recommend *any* settlement until he knew the extent of the injuries--psychological or physical--that Valerie had suffered? We cannot accept the line Ford wishes to draw in the sand.

Of the disputed 42 time entries, 28 relate to reading pleadings and correspondence that were routed to his desk. Although Ford does not suggest that he shouldn't read his mail, it does argue that fees for reading these documents are not compensable because there was no pending offer to settle. Of course, Mena would have no knowledge of what was contained in the envelopes until he opened them. Nor would he be able to ascertain the significance of the contents to the representation of Valerie until he read them. Given the conflict between Mrs. Chacon's scorched earth strategy and Valerie's interests, Mena quite properly monitored the status hearings. Over time, Mrs. Chacon did come to trust Mena and it was his concerted effort to reassure her that led to a successful conclusion of the litigation.

The Plaintiffs' legal team apparently had difficulty keeping and controlling their client. Yet Mena did not jump in to take over as counsel, nor do his time records reveal daily consultations about trial strategy. *See Land Rover U.K., Ltd.*, 210 S.W.3d at 608. For each entry, Mena specified exactly what he was reviewing. *Magna Donnelly Corp.*, 267 S.W.3d at 112. There was no affirmative testimony of duplicative work already performed by the attorney. *Id.* Nor did Mena bill for his own legal research. *Youngstown Area Jewish Federation*, 223 S.W.3d at 609. He did not conduct his own discovery. But he properly monitored the hostile relationships, particularly since Valerie was becoming more and more dependent on her mother for settlement advice while Mrs.

Chacon grew more and more willing to roll the dice.

Two time entries reflect conversations with Judge Kurita. The final twelve entries relate to attendance at court hearings. At the evidentiary hearing, Judge Kurita explained that she encourages attendance of the guardian ad litem at proceedings that impact the minor, including attendance at pretrial or scheduling conferences. She then distinguished participation from attendance:

> THE COURT: Participation and attendance are two different things. I think it is important for an ad litem if he is going to be looking out for what is in the best interest of the child to be present and to be aware of what's going on. Participating, asking questions, and doing that, that's certainly another thing.

Bearing in mind that we apply an abuse of discretion standard of review, we conclude that the services rendered fell within the scope of the guardian ad litem's duties and are compensable. We overrule Points of Error Two and Three.

**Hourly Rate**

In Point of Error Four, Ford complains that the trial court compensated Mena at an hourly rate greatly in excess of what the evidence will support. Here, the trial court awarded fees at the rate of $350 per hour. At the evidentiary hearing, Mena testified that a reasonable fee for his services would be between $200 to $250 per hour. Ford's counsel testified that a reasonable hourly rate would be between $150 to $200 per hour.

*Time Incurred After Ford's Final Settlement Offer*

Mena's Report of Hours contains the following time entries:

| | | |
|---|---|---|
| 09-13-07 | Correspondence lawyers on mediation | .50 |
| 09-16-07 | Confer client | 2.0 |
| 09-20-07 | Mediation | 5.5 |

| 09-20-07 | Conference with court on settlement | .25 |
|---|---|---|
| 09-21-07 | Conference with court on mediation agreement | 1.0 |
| 10-04-07 | Conference on Friendly suit | .50 |
| 10-06-07 | Phone Ray-Ad Litem fees | .25 |
| 10-09-07 | Phone Ray-Ad Litem fees | .25 |
| 10-10-09 | Review Ray correspondence | .25 |
| 10-11-07 | Review settlement | .25 |
| 10-11-07 | Report to Court | 1.5 |
| 10-12-07 | Friendly suit | pending |
| 10-12-07 | Order of Investment | pending |

Ford does not challenge the compensability of the services rendered.

*The Trial Court's Calculations*

> THE COURT: Bear with me for just a moment. I'm going to go ahead and award $350.00 for 80.25 hours. We are deleting the point -- the time on the conference regarding ad litem fees, and we are also giving credit for the $11,000 that was paid by Cooper Tire already so that there is not an issue of double billing. And the amount that I have left is $17,087.00.

Because we find nothing in the record to support the $350 hourly rate, we sustain Point of Error Four. This not only affects the fees charged to Ford for compensable services, it impacts the double billing credit. Because the trial court awarded fees at the rate of $350 per hour, the 38 hours billed to Cooper Tire would total $13,300. Thus, Ford has been charged $2,300 for work that was originally billed to Cooper Tire.

*Reformation of Judgment*

When reversing a trial court's judgment, we must render the judgment that the trial court should have rendered unless a remand is necessary for further proceedings or in the interest of

justice.  TEX.R.APP.P. 43.3.  An additional evidentiary hearing is not required.  Judge Kurita intended to compensate Mena for 80.25 billable hours.  Ford is entitled to a credit for the 38 hours attributable to the Cooper Tire Settlement, leaving 42.25 compensable hours.  Ford concedes that

the evidence supports an hourly rate of $250. We thus render judgment for Mena in the amount of $10,562.50.

May 19, 2010

_____
ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.