

# NUMBER 13-19-00646-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE GUARDIANSHIP OF TYLER MURRAY,
## AN INCAPACITATED PERSON

On appeal from the County Court at Law No. 1
of Victoria County, Texas.

## MEMORANDUM OPINION

**Before Justices Longoria, Hinojosa, and Tijerina**
**Memorandum Opinion by Justice Tijerina**

Appellants, James Murray (James), Guardian of the Person and Estate of Tyler Owen Murray (the ward), and Prosperity Bank, USA as Trustee (trustee) of the Section 1301 Management Trust for the benefit of Tyler Owen Murray, appeal a trial court order partially restoring the ward and terminating the guardianship of the ward's estate. By four issues, appellants assert that the trial court erred by: (1) appointing a guardian ad litem without justification; (2) not terminating the guardian ad litem thereafter; (3) awarding the guardian ad litem attorney's fees, which were not reasonable or necessary, and (4)

ordering the trustee to pay attorney's fees from the trust. We affirm in part and reverse and remand in part.

## I. BACKGROUND

Prior to his incapacitation, the ward was a medical doctor completing his internship in California. On November 7, 2015, while riding his bicycle, a truck collided with him, and he sustained life-threatening injuries. The ward was in a coma for approximately eighteen months when he suddenly, and unexpectedly, regained consciousness.

James, the ward's father, acting as the ward's next friend, sued the driver of the truck. The case was settled, and the entire net proceeds of the settlement were placed in a management trust at Prosperity Bank pursuant to § 1301 of the Texas Estates Code. *See* TEX. EST. CODE ANN. § 1301.002. Prosperity Bank was named as trustee.

On December 29, 2015, James filed an application of guardianship seeking to have himself appointed as guardian of the ward's person and estate, which the trial court granted on January 21, 2016. On August 11, 2017, James filed an "Application to Establish 1301 Management Trust for [the ward]," which the trial court ordered established on December 22, 2017.

On July 24, 2019, the Texas Department of Family and Protective Services (Department) notified the trial court that allegations of abuse, neglect, or exploitation were made against James and that an investigation was pending. The next day, the trial court appointed Jacob Harvey as guardian ad litem to represent the ward's interests.

On August 7, 2019, James filed an application to stay Harvey's appointment as the ward's guardian ad litem contending that the Department "jumped the gun" in notifying

the court of a pending investigation without completing the investigation and without notifying the court of the Department's completed findings. James requested that the trial court enter an order "instructing the Guardian Ad Litem to cease all investigative work in his capacity as Ad Litem until further notice and not to incur any more expenses or legal fees until instructed otherwise by the Court." One week later, the Department notified the trial court that based on its investigation, the allegations of medical and physical neglect were unsubstantiated.

On November 1, 2019, Harvey provided the trial court with an extensive, detailed guardian ad litem report regarding his investigation. Harvey also filed an "Application for Partial Restoration of the Ward and Termination of the Guardianship of the Estate." In his application, Harvey requested that the trial court partially restore the ward to the extent that he has regained sufficient mental capacity and to terminate the guardianship of the estate as it was no longer necessary. He provided the trial court with the most recent annual report detailing the improvement of the ward's mental capacity and cognition along with the most recent annual account from the trustee, wherein the trustee explained that the guardianship of the estate was no longer needed. Harvey also requested that he be awarded reasonable and necessary attorney's fees for legal services and expenses as guardian ad litem in accordance with § 1155.151 of the estates code. *See id.* § 1155.151. The trial court held a hearing on November 26, 2019, terminated the guardianship of the estate pursuant to Harvey's request, partially restored the ward, granted James a limited guardianship over the ward's person, and awarded Harvey attorney's fees as guardian ad litem in the amount of $11,150 from the ward's trust. *See id.*

3

James appealed and requested findings of fact and conclusions of law. In relevant part, the trial court found the following:

. . . .

2. An annual account and annual report on the condition and location of the ward covering January 2016 to January 2017 was filed with the court on April 20, 2017, but both reports were due on January 21, 2017.

. . . .

4. An annual report was filed on May 10, 2018, for the period covering January 2017 to January 2018, but the report was due January 21, 2018.

5. The court issued a demand letter on December 10, 2018, for an annual account for the period covering January 2017 to January 2018. The annual account was filed January 8, 2019.

6. The court issued a demand letter on April 4, 2019, for both the annual account and annual report for the period covering January 2018 to January 2019. The annual account was filed on April 23, 2019, but it was due January 21, 2019.

   The court issued a second demand letter on July 25, 2019, for an annual report covering January 2018 to January 2019. The report was filed on July 30, 2019.

7. The Department notified the court on July 24, 2019, of a complaint intake against the guardian, James. The allegations in the intake were financial exploitation, medical and physical neglect by James against the ward.

8. An order appointing a guardian ad litem was issued on July 25, 2019 to represent the best interests of the ward.

   . . . .

10. An application and proposed order to stay the appointment of the guardian ad litem was filed on August 7, 2019.

11. The Department found that the allegations of physical and medical

4

neglect were invalid on August 12, 2019. "Per APS policy, financial exploitation was not investigated due to guardianships being required to submit annual accountings to the court."

12.    An annual account covering December 2017 to December 2018 was filed on August 16, 2019, but it was due February 25, 2019.

13.    In Harvey's report filed November 1, 2019, he detailed several areas of concern regarding James's role as the guardian, including "failure to apply for approval before agreeing to or signing a settlement, numerous instances of not filing Annual Account and Annual Reports by the deadlines, failure to specify separately the amounts requested for education and maintenance of [the ward] and the maintenance of his property in Application for Annual Expenditures, grossly exceeding the monthly allowance approved without requesting additional approval or giving explanation for excess expenditures, failure to apply for approval for contract for services and/or expenditures for personal care and transportation for Ward, not filing Medicaid once Trust was established, failure to file initial accounting by Trustee and a late filing of annual account by Prosperity Bank, Trustee."

. . . .

15.    On November 26th, 2019, Harvey presented the most recent annual accounts filed by Guardian and Trustee, which sufficiently showed the absence of need and purpose of the guardianship of estate.

. . . .

17.    Harvey agreed with the Department's assessment regarding physical and medical neglect. The investigation of financial exploitation was also found to be invalid. However, Harvey did discover issues of non-compliance that were necessary to bring to the court's attention.

## II.    APPOINTMENT OF GUARDIAN

By their first issue, appellants assert that "the trial court abused its discretion in appointing a guardian ad litem prior to receipt of the findings and report from [the Department]."

5

## A. Standard of Review & Applicable Law

In a guardianship proceeding, the court may appoint a guardian ad litem to represent the interests of an incapacitated person in a guardianship proceeding. TEX. EST. CODE ANN. § 1054.051.[1] A guardian ad litem is "a person appointed by a court to represent the best interests of an incapacitated person in a guardianship proceeding," *id.* § 1002.013, is "an officer of the court," "investigate[s] whether a guardianship is necessary for the proposed ward," and "evaluate[s] alternatives to guardianship and supports and services available to the proposed ward that would avoid the need for appointment of a guardian." *Id.* § 1054.054.

We review a trial court's guardianship determination for an abuse of discretion. *In re Guardianship of A.E.*, 552 S.W.3d 873, 876 (Tex. App.—Fort Worth 2018, no pet.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). A trial court also abuses its discretion by ruling without supporting evidence or by misapplying the law to undisputed facts. *See Fuller v. State Farm Cnty. Mut. Ins. Co.*, 156 S.W.3d 658, 660 (Tex.

---

[1] Appellants cite Texas Rule of Civil Procedure 173.1 for the proposition that although the estates code provides that a judge may appoint a guardian ad litem to represent the interest of an incapacitated person, "the courts have historically engrafted the requirements of Rule 173 . . . requiring there to be an apparent conflict of interest into [the estate codes] section." However, Rule 173 governs the procedure for appointing a guardian ad litem in civil litigation when there is an apparent adverse interest between a minor and the next friend or guardian. *See* TEX. R. CIV. P. 173.2. It expressly provides that Rule 173 "does not apply to an appointment of a guardian ad litem governed by statute or other rules." *Id.* R. 173.1. Thus, the role of the guardian ad litem in civil lawsuits is not governed by the Texas Estates Code. *See Goodyear Dunlop Tires North Am., Ltd. v. Gamez*, 151 S.W.3d 574, 584 n.8 (Tex. App.—San Antonio 2004, no pet.).

Here, James filed an application for the guardianship of the ward's person and estate as well as an application for a § 1301 management trust—both probate matters governed by the Texas Estates Code. *See* TEX. EST. CODE ANN. §§ 1251.001; 1301.002. Therefore, appellants' reliance on Rule 173 is misplaced. *See* TEX. R. CIV. P. 173.1.

App.—Fort Worth 2005, no pet.). But discretion is not abused when the trial court bases its decision on conflicting evidence and some evidence of substantive and probative character supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (op. on reh'g). When our review is for abuse of discretion, findings of fact and conclusions of law help us review the propriety of the trial court's ruling by providing us with an explanation for the ruling. *In re J.P.C.*, 261 S.W.3d 334, 336–37 (Tex. App.—Fort Worth 2008, no pet.).

## B. Discussion

### 1. Initial Appointment

Appellants argue that the trial court abused its discretion in appointing a guardian ad litem prior to the Department's conclusion of its investigative findings. Specifically, appellants assert that the trial court incorrectly found that the Department's policy required the Department to inform the trial court of a *pending* investigation whereas the policy requires the Department to notify the trial court "upon conclusion of the investigation."

The estates code broadly provides that "it is within the discretion of the trial court to appoint a guardian ad litem," which appellants acknowledge. *See* TEX. EST. CODE ANN. § 1054.051. That is, the trial court's discretion to appoint a guardian ad litem is not contingent on the whether the Department followed its internal policies. "[T]he court may appoint a guardian ad litem to represent the interests of an incapacitated person in a guardianship proceeding," and the record shows that the trial court was informed of an allegation regarding abuse, neglect, or exploitation, which prompted an investigation from the Department. *See id.*

7

The trial court specifically found:

> The receipt of a Notice of potential physical and medical neglect along with financial exploitation was concerning and the Court felt it had the duty to investigate any and all potential neglect, exploitation, nonreporting and non-compliance of a guardianship underneath its jurisdiction. Therefore, a guardian ad litem was appointed to represent the best interests of the Ward.

> The investigation of financial exploitation was also found to be invalid. However, the guardian ad litem did discover issues of non-compliance that were necessary to bring to the Court's attention.

The Department's conclusion that the allegation was "invalid" has no bearing on the trial court's initial finding that the ward would be well-served by the appointment of a guardian ad litem due to the allegations alleged. The trial court explained: "I'm the one that put this guardianship in place and I've got these allegations of neglect and exploitation staring me in the face. . . had they had been true . . . and I waited for a final investigation, [the ward] may be worse off than what [he was] in the beginning." The trial court further stated, "[A]t the time I felt like I [did not have] any other alternative except to do something proactive to look into this." Moreover, when the Department notified the trial court of the allegations, the trial court was aware that James had been consistently late in filing annual reports and annual accounts. Because "it is within the discretion of the trial court to appoint a guardian ad litem," we conclude that the trial court did not act without reference to any guiding rules or principles or act arbitrarily or unreasonably in appointing a guardian ad litem. *See* TEX. EST. CODE ANN. § 1054.051; *Low*, 221 S.W.3d at 614. We overrule appellants' first issue.

### 2. Request to Terminate

By their second issue, appellants assert the trial court erred in not terminating the

8

guardian ad litem once the Department's investigation failed to substantiate the abuse allegations. Appellants rely on Rule 173 as authority to support their argument that "the trial court should remove the guardian ad litem when the evidence presented fails to confirm that a conflict of interest exists." However, Rule 173 governs the appointment of a guardian ad litem in civil litigation and is inapplicable to this case. *See Goodyear Dunlop Tires North Am., Ltd. v. Gamez*, 151 S.W.3d 574, 584 n.8 (Tex. App.—San Antonio 2004, no pet.).

Nonetheless, the trial court has the ultimate responsibility for protection of the ward's best interest. *See In re Guardianship of Glasser*, 297 S.W.3d 369, 376 (Tex. App.—San Antonio 2009, no pet.). In determining whether to remove the ward's guardian ad litem, the trial court's only consideration is the ward's best interest. *See id.* Appellants point to nothing in the record suggesting the trial court considered anything other than the ward's best interest when it did not rule on James's request to terminate the guardian ad litem. In fact, Harvey's investigation revealed that there were ways to streamline the guardianship, and the ultimate result of his investigation effected a partial restoration of the ward and a termination of the guardianship of the ward's estate. *See id.* Therefore, there was some evidence of substantive and probative character to support the trial court's decision in not terminating Harvey's appointment, and we find the trial court did not abuse its discretion. *See Unifund*, 299 S.W.3d at 97. We overrule appellants' second issue.

### III.    FEES

The trial court awarded Harvey "reasonable and necessary attorney's fees for legal

9

services" and costs pursuant to § 1155.151 of the estates code for a total of $11,150.[2] Appellants argue that the trial court abused its discretion in awarding Harvey, as guardian ad litem, "attorney's fees" because he was not appointed to serve as the ward's attorney.

## A. Standard of Review & Applicable Law

Generally, we review the trial court's approval of fees incurred by a guardian ad litem for an abuse of discretion. *See Guardianship of A.B.,* No. 11-19-00185-CV, __ S.W.3d __, __, 2021 WL 1918715, at *3 (Tex. App.—Eastland May 13, 2021, pet. filed); *Epstein v. Hutchison,* 175 S.W.3d 805, 807 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). "A trial court abuses its discretion when its decision is contrary to the law." *Epstein,* 175 S.W.3d at 807. We "reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable." *Guardianship of A.B.,* 2021 WL 1918715, at *3 (internal citations omitted). "The trial court abuses its discretion if there is insufficient evidence to support the allowance." *City of Houston v. Woods,* 138 S.W.3d 574, 580 (Tex. App.—Houston [14th Dist. 2004, no pet.).

"A guardian ad litem is entitled to reasonable compensation for services provided in the amount set by the court, to be taxed as costs in the proceeding." TEX. EST. CODE ANN. § 1054.055. "In a guardianship proceeding, the cost of any guardians ad litem, attorneys ad litem, court visitors, mental health professionals, and interpreters appointed under this title shall be set in an amount the court considers equitable and just." *Id.* §

---

[2] The trial court's order recites: "IT IS FURTHER ORDERED that reasonable and necessary attorney's fees for legal services and costs provided by [Harvey] to the Ward as Guardian ad Litem, in the total amount of $11,150.00 is hereby approved and is to be paid from the funds from the Ward's 1301 Management Trust as per Texas Estate Code 1155.151."

10

1155.151(a–1). These costs "shall . . . be paid . . . out of the management trust, if a management trust has been created for the benefit of the ward under Chapter 1301 and the court determines it is in the ward's best interest . . . ." *Id.* § 1155.151(a).

**B.   Discussion**

According to Harvey's guardian ad litem report, Harvey interviewed the ward, James, three investigators for the Department, the trustee, the ward's mother, home health wound specialists, and the ward's physical therapy team, among others. He also reached out to several other facilities that currently see and treat the ward, and reviewed all the medical reports, all financial transactions since January 2018, the annual reports, reimbursements to James, and monthly expenditures, among others. While Harvey is an attorney, the evidence provides that he performed the duties required of a guardian ad litem. We agree with Harvey that he was entitled to reasonable compensation for his role as guardian ad litem pursuant to § 1054.055 and § 1155.151(a–1), but Harvey requested, and the trial court awarded, "reasonable and necessary attorney's fees for legal services and expenses" in addition to § 1155.151 compensation as guardian ad litem. However, an attorney who serves as guardian and who also provides legal services in connection with the guardianship is not entitled to compensation for the guardianship services or payment of attorney's fees for the legal services unless the attorney files a detailed description of the services performed segregating guardianship services and legal services. *See id.* § 1155.052.

Although attorney ad litem fees are also taxable as court costs pursuant to § 1155.151(a–1), the estates code mandates that the attorney ad litem file "a detailed

description of the services performed segregating guardianship services and legal services" to be entitled to compensation. *Id.* Here, no invoice, bill, affidavit, itemized statement, or document was admitted into evidence detailing a description of the services performed segregating guardianship services from legal services to justify the trial court's award of attorney's fees. *See id.* The trial court did not hold an evidentiary hearing regarding Harvey's request for attorney's fees, and Harvey did not testify at the November 26, 2019 hearing detailing any legal services he may have provided. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) ("To determine whether attorney['s] fees are reasonable, the trial court must consider the Arthur Andersen factors."); *Interest of D.Z.*, 583 S.W.3d 284, 297 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (op. on reh'g) ("Mother's previous attorney did not testify about her attorney's fees at the hearing, and the trial court did not admit Mother's attorney's affidavit or billing records"; therefore, "Mother's evidence 'lacks the substance required to uphold a fee award' and thus is legally insufficient."). The only testimony addressing Harvey's request for "reasonable and necessary attorney's fees for legal services" is the following:

> [James]: And so, now we're talking about paying [Harvey] money that should never—really should have never been incurred in the first place.
>
> The Court: Well, point taken. Anything else?
>
> [James]: I'm sorry. I don't have the amount of your fee. Do you know it?
>
> [Harvey]: Yeah, it's listed in the order.
>
> The Court: $11,150.
>
> [James]: Wow. 11,000. Really? Can I see—you were going to

|  |  |
|---|---|
| | give me a breakdown at one time. Did where did that— I didn't get that. Oh, no, I've never seen that. Can I be given an opportunity to review this? |
| The Court: | Yes, sir. |
| [James]: | I'm not going to take up the Court's time. I don't know where we're going to go from here. |
| The Court: | Right. I understand. |
| [James]: | Because I'm going to be talking to the Trustee and seeing if maybe we can do something to prevent this. Okay. |
| The Court: | That's fine. Well, with that I guess this hearing is closed. |

Based on this record, there is no evidence that Harvey performed any services outside his role as guardian ad litem. With no invoice or testimony before us, we are unable to justify or review the trial court's award of reasonable and necessary attorney's fees for legal services. *See Rio Grande Valley Gas Co. v. Lopez*, 907 S.W.2d 622, 625 (Tex. App.—Corpus Christi–Edinburg, 1995 no pet.) (finding that the trial court abused its discretion in awarding attorney's fees when the evidence consisted of testimony that the amount was reasonable and an affidavit that the amount requested was reasonable); *Guardianship of Alford*, 596 S.W.3d at 360 (reviewing "an itemized billing describing every action billed for in detail and set the amount of time spent on each item and costs incurred for every action in accordance with his charged rate" in an appeal for attorney's fees awarded to an attorney ad litem); *see also Owens-Collins v. Drexler*, No. 01-19-00520-CV, WL 7062322, at *5 (Tex. App.—Houston [1st Dist.] Dec. 03, 2020, pet. denied) (mem. op.) ("[W]e will reverse only if no evidence supports the factfinder's finding or its finding

13

is so contrary to the great weight and preponderance of the evidence as to be manifestly erroneous or unjust."). Accordingly, we sustain appellants' issues concerning the amount of reasonable and necessary attorney's fees for legal services awarded to Harvey.

We reverse the trial court's judgment signed on November 26, 2019, insofar as it awards a total of $11,150 in reasonable and necessary attorney's fees for legal services and costs to Harvey and remand for further proceedings and a re-calculation of the fees in a manner consistent with this opinion. On remand, the trial court should reconsider compensating Harvey as guardian ad litem pursuant to § 1054.055 and § 1155.151(a–1). *See* TEX. EST. CODE ANN. §§ 1155.055, 1155.152. The trial court's judgment is affirmed in all other respects.

## IV.    CONCLUSION

We affirm the trial court's judgment in part and reverse and remand in part.


JAIME TIJERINA
Justice


Delivered and filed on the
19th day of August, 2021.

14